# WILLIE LEON SMELSER *v.* CRITERION INSURANCE COMPANY

[No. 115, September Term, 1981.]

*Decided May 6, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Joseph S. Matricciani,* with whom was *Robert E. McManus* on the brief, for appellant.

*Amicus Curiae* brief of The Coca-Cola Company filed. *Francis B. Burch, Jr.* and *Charles P. Scheeler* on the brief.

*David D. Patton* for appellee.

SMITH, J., delivered the opinion of the Court.

We shall here hold that Maryland Code (1957, 1972 Repl. Vol., 1975 Cum. Supp.) Art. 48A, § 543 (d) means precisely what it says when it specifies that personal injury protection benefits, which are commonly referred to as "PIP" benefits, under motor vehicle insurance policies are to be reduced to the extent that a recipient has recovered sums pursuant to the workmen's compensation laws of any state or the federal government.

Appellant, Willie Leon Smelser, was injured on October 4,

1978, while working as a mechanic for a Baltimore City automobile dealer. He was struck by a customer's vehicle which was driven by a fellow employee. As a result, Smelser was pinned against his workbench and his legs were crushed. The car was insured by appellee, Criterion Insurance Company. The coverage under that policy included the benefits specified in Art. 48A, § 539 (a). By the terms of that statute, motor vehicle liability policies in this State are required to include disability benefits "up to an amount of $2,500" to cover, among other things, "in the case of an income producer, payment of benefits for loss of income as the result of the accident . . . ." [1] Smelser sought benefits under the Workmen's Compensation Act and was paid $202 per week as temporary total disability benefits. His total payments amounted to $11,254.29. Smelser's normal weekly earnings were $342.46. He thus claimed from Criterion the difference of $140.46 under the PIP coverage. Criterion declined to pay on the strength of § 543 (d), which states that benefits payable under § 539 "shall be reduced to the extent that the recipient has recovered benefits under workmen's compensation laws of any state or the federal government." [2]

---

1. The text of the statute applicable at the time of the accident, and now codified without change as Code (1957, 1979 Repl. Vol.) Art. 48A, § 539 (a), states in pertinent part:

"No policy of motor vehicle liability insurance shall be issued, sold or delivered in this State . . ., unless the policy also affords the minimum . . . disability benefits set forth herein . . . . The benefits, or their equivalent, shall cover the named insured and members of his family residing in his household . . . injured in any motor vehicle accident . . ., other persons injured while occupying the insured motor vehicle as a guest or passenger, or while using it with the express or implied permission of the named insured . . ., and pedestrians injured in an accident in which the insured motor vehicle is involved or individuals injured in, on, or alighting from any other vehicle operated by animal or muscular power in an accident in which an insured vehicle is involved. The minimum . . . disability benefits shall include up to an amount of $2,500 . . . in the case of an income producer [for] payment of benefits for loss of income as the result of the accident . . . ."

The parties agree that Smelser is covered under this provision.

2. The statute in question is now codified, without change since the

Smelser sued Criterion in the District Court of Maryland in Baltimore City, where judgment was entered in his favor. Criterion appealed to the Baltimore City Court. It reversed upon the strength of *State Farm Mut. v. Ins. Comm'r,* 283 Md. 663, 392 A.2d 1114 (1978). We then granted Smelser's petition for the writ of certiorari in order that we might address the important public question regarding the proper construction of this statute.

In *State Farm,* Patrick Morris was injured while driving his own vehicle in the course of his employment. He received workmen's compensation benefits in the amount of $379.50. Morris pursued a tort claim against the negligent third party and made a favorable settlement. After Morris reimbursed his workmen's compensation carrier for the amount it had paid him, he filed a claim for PIP benefits against his own automobile insurance carrier, State Farm Mutual Automobile Insurance Company. When the case reached us, Judge Eldridge said for the Court:

"In the instant case, the language of Art. 48A, § 543 (d), is plain and unambiguous. It requires State Farm to reduce the PIP benefits payable to

accident, as Code (1957, 1979 Repl. Vol.) Art. 48A, § 543. It provides in pertinent part:

"§ 543.   **Duplication of benefits; coordination of policies.**

"(a) . . .

"(b) . . .

"(c) . . .

"(d) *Receipt of benefits under workmen's compensation laws.* — Benefits payable under the coverages required in §§ 539 and 541 of this article shall be reduced to the extent that the recipient has recovered benefits under workmen's compensation laws of any state or the federal government."

Code (1957, 1981 Repl. Vol.) Art. 1, § 18, as enacted by Ch. 196 of the Acts of 1961, providing that "[t]he captions or headlines of the several sections of th[e] Code which are printed in bold type, and the captions or headlines of the several subsections . . . which are printed in italics . . . , are intended as mere catchwords to indicate the contents of the sections and subsections" and "are not to be deemed or taken as titles of the sections and subsections, or as any part thereof," is not applicable in this instance since the captions are found in the original enactment of § 543 by Ch. 73 of the Acts of 1972.

Morris by the $379.50 workmen's compensation benefits which Morris received." 283 Md. at 671.

In this case Smelser points to the provisions of § 544 (a), which indicate that benefits under § 539 "shall be made periodically as the claims therefor arise and within 30 days after satisfactory proof thereof is received by the insurer," with limitations not relevant to this case.

Smelser seeks to distinguish *State Farm*, saying, "Since the total involved did not exceed $2500.00, the issue presented in this case was never before the Court." He argues to us:

> "It is the Petitioner's position that he is entitled to receive the difference between the actual amount of lost wages and the amount paid as temporary total benefits by the workmen's compensation carrier up to a total of $2500.00. The reduction in P.I.P. benefits for workmen's compensation payments received provided for in Section 543 (d) does not reduce the $2500.00 maximum entitlement where the claimant has incurred $2500.00 or more in uncompensated lost wages, but merely serves to eliminate double payment to the claimant.

> "Therefore, the correct manner of calculating the benefits to which he is entitled pursuant to these statutory provisions is on a periodic basis. In this case, at the end of one week Mr. Smelser's total lost wages amounted to $342.46, of which $202.00 had been paid as temporary total disability benefits by the compensation carrier, leaving an uncompensated wage loss of $140.36 [sic] which under the provisions of Section 544 (a), the Petitioner was entitled to receive not later than 30 days after satisfactory proof thereof was provided to the insurer."

This Court has stated many times the canons of statutory construction applicable to this case. The cardinal rule, which

Judge Digges referred to for the Court as "[t]he polestar of statutory interpretation" in *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 311, 407 A.2d 738 (1979), is to ascertain and carry out the real legislative intent. In determining that intent, the Court considers the language of an enactment in its natural and ordinary signification. A corollary to this rule is that if no ambiguity or obscurity appears in the language of the statute, there is usually no need to look elsewhere to ascertain the General Assembly's intent. Where two statutes deal with the same subject matter, as here, they must be construed together if they are not inconsistent with one another. Thus, to the extent possible, full effect should be given to each. This is true even if the statutes have been enacted at different times with no reference to each other, in which case the rule is that the statutes must be harmonized to the extent possible. A court may not insert or omit words to make a statute express an intention not evidenced in its original form. Absent a clear indication to the contrary and if reasonably possible, a statute is to be read so that no word, clause, sentence, or phrase is rendered surplusage, superfluous, meaningless, or nugatory. See *Police Comm'r v. Dowling,* 281 Md. 412, 418-19, 379 A.2d 1007 (1977), and cases there cited. See also *Balto. Bldg. & Constr. Trades v. Barnes,* 290 Md. 9, 15 427 A.2d 979 (1981); *Dep't of St. Planning v. Hagerstown,* 288 Md. 9, 14-15, 415 A.2d 296 (1980); *Equitable Tr. Co. v. State Comm'n,* 287 Md. 80, 86, 88, 411 A.2d 86 (1980); and *Wheeler v. State,* 281 Md. 593, 596-97, 380 A.2d 1052 (1977), *cert. denied,* 435 U.S. 997 (1978), from which Judge Eldridge quoted for the Court in *State Farm,* 283 Md. at 670.

In *State Farm,* Judge Eldridge observed for the Court:

"Section 543 in its entirety was enacted as part of the comprehensive statute relating to many aspects of motor vehicle insurance and reparations for damages suffered in motor vehicle accidents, Ch. 73 of the Acts of 1972. One of the many purposes of that statute, as expressed in its title, was providing 'direct first party coverage for certain types and

amounts of economic loss; [and] prohibiting the duplication of benefits. . . .'

"Section 543, entitled 'Duplication of benefits, coordination of policies,' was one of those parts of the Act designed to carry out the legislative purpose of prohibiting the duplication of benefits. The subsections of § 543 restrict the duplication of insurance benefits in several respects, one of which in subsection (d) is the reduction of PIP benefits to the extent that the claimant recovered workmen's compensation benefits." 283 Md. at 674-75.

Note 3 points out that the title of an act is relevant in ascertaining the legislative intent and purpose. Note 4 states, as we have already commented in our n.2 above, that the heading in the section here was not merely a caption inserted by the codifier which could be disregarded under Art. 1, § 18, but was in the act itself. Additionally, in *Travelers Ins. Co. v. Benton,* 278 Md. 542, 543, 365 A.2d 1000 (1976), Chief Judge Murphy summarized for the Court the coverage of the statutory scheme enacted by Ch. 73 of the Acts of 1972. He pointed out for the Court that the provision making PIP coverage mandatory is premised on a "no-fault basis." 278 Md. at 545.

At oral argument Smelser relied upon the formula that the chancellor used in *Tillman v. Allstate Insurance Company,* 154 N.J. Super. 206, 381 A.2d 74 (1977). The trial judge there stated:

"I find that the payments plaintiff Thomas Tillman received as temporary disability benefits of $90 a week were properly deducted from the $100 a week income continuation benefits. Payments were made for 20 weeks, during which time defendant paid him $10 a week. There shall be paid to him by defendant an additional sum of $50, representing payments due of $10 a week for the five additional weeks he was unable to work." 154 N.J. Super. at 211.

The New Jersey statute has distinct similarities to the Maryland statute. The former statute provides:

> "The benefits provided in section 4a., b., c., d., and e. and section 10, [the basic and supplemental PIP benefits,] shall be payable as loss accrues, upon written notice of such loss and without regard to collateral sources, except that benefits collectible under workmen's compensation insurance, employees temporary disability benefit statutes and medicare provided under Federal law, shall be deducted from the benefits collectible under section 4a., b., c., d., and e. and section 10." N.J.S.A. 39:6A-6.

A trial judge in *Bernick v. Aetna Life and Casualty,* 158 N.J. Super. 574, 386 A.2d 908 (1978), a case in which workmen's compensation benefits had been paid, reached a conclusion similar to that of the judge sitting in the Baltimore City Court here. *Bernick* was relied upon and quoted from in *State Farm,* 283 Md. at 672-73. The New Jersey Supreme Court and the Appellate Division of the Superior Court do not appear to have considered the matter.

An issue identical to that in the case at bar was before the Supreme Court of Michigan in *Mathis v. Interstate Freight,* 408 Mich. 164, 289 N.W.2d 708 (1980). The statute there provided:

> "Benefits provided or required to be provided under the laws of any state or the federal government shall be subtracted from personal protection insurance benefits otherwise payable for the injury." MCL § 500.3109(1); MSA § 24.13109 (1).

The court said:

> "The workers' compensation benefits are paid as a result of the same accident and duplicate in varying degrees the no-fault benefits otherwise due. According to our findings in *O'Donnell [v. State Farm Ins.,* 404 Mich. 524, 273 N.W.2d 829, *appeal dismissed,*

444 U.S. 803 (1979)], this brings the workers' compensation benefits within the scope of § 3109 (1). Therefore, the workers' compensation benefits must be set off against the no-fault benefits otherwise due." 408 Mich. at 187.

In *Moore v. Travelers Ins. Co.*, 475 F. Supp. 891 (E.D. Mich. 1979), the court considered the meaning of the terms "provided or required to be provided" as they appear in the Michigan statute. The court stated:

"In this case, the amount of benefits 'required' to be provided is $7,112, that being 56 weeks of worker's compensation wage loss benefits. The actual amount 'provided' was some as yet undetermined portion of the $10,000.00 redemption. Thus, the question is which of these two amounts is to be offset. I conclude that it is the amount required to be paid which should be offset rather than the undetermined portion of the $10,000 actually paid. This conclusion is appropriate for several reasons. First, to hold that only benefits paid should be offset would present problems in cases wherein suit was instituted against the no-fault carrier before the expiration of the full three-year period for which it is liable under M.C.L.A. § 500.3107 (b). Otherwise, the carrier would not be able to deduct payments it knew the compensation carrier would eventually pay, even though such benefits were 'required'. Second, if only benefits actually paid could be offset, it would allow the Plaintiff to elect who, as between the no-fault and compensation carriers, to collect benefits from. This would disturb the legislatively established relative spheres of application of no-fault and compensation. Section 3109 (1) clearly contemplates that the no-fault carrier should be liable only for the excess of its coverage over and above that potentially provided by the compensation carrier. Third, it can fairly be said in the case of a redemption that the claimant has received an

amount which is functionally equal to the maximum recoverable from the compensation carrier. To the extent that amount is numerically smaller than the total potential recovery, it is simply a reflection of the questionableness of the Plaintiff's entitlement to the maximum recovery from the compensation carrier. Because the aim of no-fault was to lower insurance premiums, it would be counter-productive to allow an injured person to recover from the no-fault carrier benefits to which he has already surrendered all claim." 475 F. Supp. at 894-95.

Cases presenting problems similar to the one at bar are collected and analyzed in Annot., 10 A.L.R.4th 996, 1015-20 (1981).

The statute here is as clear and unambiguous today as it was when it was before the Court in *State Farm*. The provision in § 544 (a) for periodic payments in no way changes that view. The act states that benefits payable under § 539 "shall be reduced to the extent that the recipient has recovered benefits under workmen's compensation laws of any state or the federal government." The purpose of the act is to put a limited amount of money in the hands of an injured individual under certain circumstances without regard to whether another person is liable for the injuries which the claimant sustained. Where a person is injured while covered under the Workmen's Compensation Act, this purpose has already been achieved. Furthermore, contrary to appellant's assertions, he is not entitled to PIP benefits as a matter of right on the basis that he should be made whole since he has suffered uncompensated wage losses. Manifestly, Smelser's proposed interpretation would contravene the established principle of statutory construction that a court may not insert or omit words to make a statute express an intention not evidenced in its original form. *See Dowling*, 281 Md. at 419.

Since the sum recovered here is in excess of the benefits payable under § 539, a negative balance is created and

Smelser is entitled to nothing from his PIP carrier. This is not a windfall for the insurance company, as was suggested at oral argument, because the company undoubtedly factored the statutory provision into its rate when it calculated its potential exposure.

*Judgment affirmed; appellant to pay the costs.*