504 A.2d 632

**Ode H. HINES**

v.

**POTOMAC ELECTRIC POWER COMPANY et al.**

**No. 156, Sept. Term, 1984.**

Court of Appeals of Maryland.

Feb. 24, 1986.

Browne L. Kooken, Upper Marlboro, for appellant.

Michael McGowan (Charles E. Gallagher, Jr., Kevin J. McCarthy and O'Malley, Miles, McCarthy & Harrell, on brief), Upper Marlboro, for appellees, Potomac Elec. Power Co. and Prulease, Inc.

Edward C. Bell, Langley Park, for Government Employees Ins. Co.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

COLE, Judge.

We granted certiorari in this case to determine whether Maryland Code (1957, 1979 Repl.Vol.), Art. 48A, § 543(d) precludes the recovery of Personal Injury Protection (PIP) and Uninsured Motorist (UM) benefits where the claimant has already recovered workmen's compensation benefits in excess of the total amount of PIP and UM coverage available to the claimant under his employer's certificate of self-insurance or under his own personal automobile insurance policy.

The facts are straightforward. Ode H. Hines, appellant, was an employee of Potomac Electric Power Company

(PEPCO) and was injured in an automobile accident with an uninsured motorist[1] in the District of Columbia. At the time of the accident, Hines was driving a vehicle provided to him by PEPCO and owned by Prulease, a wholly-owned subsidiary of PEPCO. The vehicle was self-insured by PEPCO, as evidenced by a certificate of self-insurance issued by the Motor Vehicle Administration (MVA). The certificate of self-insurance provided for, *inter alia,* PIP and UM coverage.

At the time of the accident, Hines maintained a policy of automobile insurance with Government Employees Insurance Company (GEICO). The policy provided for PIP benefits up to $7,500 and UM benefits up to $20,000 per person or $40,000 per accident. Hines made a claim with PEPCO, Prulease and GEICO for payment of both PIP and UM benefits from each. His claims were denied.

By virtue of his employment in the District of Columbia, Hines also made claim for workmen's compensation benefits. He recovered approximately $35,000 in such benefits. However, feeling aggrieved by the denial of PIP and UM benefits, Hines filed suit in the Circuit Court for Prince George's County for a declaratory judgment as to his entitlement to PIP and UM benefits from PEPCO, Prulease and GEICO.

The Circuit Court declared that PEPCO, Prulease and GEICO had no obligation to pay PIP or UM benefits to Hines because Hines's recovery of workmen's compensation benefits exceeded the maximum coverage provided by PEPCO, Prulease and GEICO. Hines appealed to the Court of Special Appeals. Prior to consideration by the intermediate appellate court, we issued a writ of certiorari on our own motion.

---

**1.** Although the trial court did not specifically find as a fact that the vehicle that collided with Hines's vehicle was uninsured, the trial court did proceed, in its order declaring rights of parties, to declare the rights of the parties upon the basis that the vehicle in question was uninsured.

Initially, Hines contends that the trial court erred in ruling that PEPCO's [2] obligation as a self-insurer is limited to the minimum UM coverage required by Maryland Code (1957, 1979 Repl.Vol.), Art. 48A, § 541(c). Before determining the extent of PEPCO's obligation as a self-insurer, it is necessary to review a number of statutes. Maryland Code (1984), § 17–104(a) of the Transportation Article provides that MVA may not "issue or transfer the registration of a motor vehicle unless the owner or prospective owner furnishes evidence satisfactory to [MVA] that the required security is in effect." "Required security" is defined as "security in the form and providing for the minimum benefits required under this subtitle...." Maryland Code (1984), § 17–101 of the Transportation Article. Section 17–103(a)(2) of the Transportation Article provides that the required security may be either a vehicle liability insurance policy or another form of security, as long as MVA finds that the security adequately provides the benefits required by subsection (b). MVA recognizes a certificate of self-insurance as a permissible form of security, as long as the self-insurer provides the same benefits available under a required motor vehicle liability policy. Md.Admin.Code tit. 11, § 18.02.01A (1985).

Section 17–103(b)(1)–(4) of the Transportation Article establishes the required minimum benefits for a motor vehicle liability policy and for all other forms of security. Section 17–103(b)(3) states that "the security required under this subtitle shall provide for at least the benefits required under Article 48A, § 539 of the Code as to basic required primary coverage." These benefits are commonly referred to as PIP benefits. Section 539 requires each motor vehicle liability policy to provide for PIP benefits of up to $2,500. Section 17–103(b)(4) states that "the security required under this subtitle shall provide for at least the benefits required under Article 48A, § 541 of the Code as to required addi-

---

**2.** Because Prulease is a wholly-owned subsidiary of PEPCO, we will refer to PEPCO and Prulease jointly as "PEPCO."

tional coverage." Section 541 provides that "[i]n no case shall the uninsured motorist coverage be less than the coverage afforded a qualified person under Article 48A, §§ 243H and 243–I." Section 243–I sets forth the required coverage as $20,000 for injury or death of any one person per accident, $40,000 for injury or death of two or more persons per accident, and $10,000 for property damage in any one accident.

Because PEPCO is self-insured, Hines argues that PEPCO's potential liability for PIP and UM claims is not limited to the minimum coverages required by §§ 539 and 541. In support of his argument, Hines points to the phrases "at least" and "no less than" in the statutes that establish the minimum required benefits. Based on this language, Hines asserts that the amount of uninsured motorist coverage and personal injury protection that a self-insured employer is required to provide is not limited to the minimum required coverages.

In *Pennsylvania Nat'l Mut. v. Gartelman,* 288 Md. 151, 416 A.2d 734 (1980), Judge Davidson noted for the Court a fundamental rule of statutory construction: "Where statutory language is plain and unambiguous and expresses a definite meaning consonant with the statute's purpose, courts must not insert or delete words to make a statute express an intention different from its clear meaning." 288 Md. at 159, 416 A.2d at 737 (citing *Dep't of St. Planning v. Hagerstown,* 288 Md. 9, 15, 415 A.2d 296, 299 (1980)).

We think that the statutory language in question is plain and unambiguous in *requiring* an insurer, whether a private insurance carrier or a self-insurer, to provide only the minimum benefits as set forth in the statutes. Clearly, insurers are free to provide *more* than the minimum benefits, but only the statutory amounts, and these amounts alone, are mandatory.

Hines also contends that it is inconsistent to maintain that a self-insurer cannot limit its liability to a third party injured by one of its employees while in the course of his

employment, but can limit its liability to an employee who is injured in the course of his employment by an uninsured motorist. This argument ignores the basic purpose behind the statutory requirement of uninsured motorist coverage. Judge Eldridge, speaking for the Court in *Nationwide Mutual Ins. v. Webb*, 291 Md. 721, 436 A.2d 465 (1981) articulated the policy behind the requirement of UM coverage:

> The courts have repeatedly stated that the purpose of uninsured motorist statutes is "that each insured under such coverage have available the full statutory minimum to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the financial responsibility law."

*Id.* at 737, 436 A.2d at 474 (quoting *Webb v. State Farm Mutual Automobile Ins. Co.*, 479 S.W.2d 148, 152 (Mo.App. 1972). Thus, the purpose of mandating UM coverage is to provide some measure of compensation to the innocent victims of financially irresponsible uninsured motorists. *See Rafferty v. Allstate Insurance Co.*, 303 Md. 63, 70, 492 A.2d 290, 294 (1985). The adoption of Hines's position would lead to an anomalous result: "[it] would give a victim of an uninsured motorist greater insurance protection than would be available if he had been injured by an insured motorist having only the minimum required liability insurance." *Rafferty v. Allstate Insurance Co., supra*, 303 Md. at 70, 492 A.2d at 294 (quoting *Yarmuth v. Government Employees Insurance Co.*, 286 Md. 256, 265, 407 A.2d 315, 319 (1979)). Indeed, the practical effect of requiring a self-insurer to maintain unlimited UM coverage would be to place the self-insurer in the shoes of the tortfeasor, the uninsured motorist, with respect to liability for the total amount of the claimant's damages. This we refuse to do.

With regard to the insurance requirements applicable to a self-insurer, MVA regulations provide that "the administration (MVA) in its discretion, may, upon the application of the person, issue a certificate of self-insurance when it is satisfied that the person is able and will continue to be able

to pay the *same benefits* available under a required motor vehicle insurance policy." Md.Admin.Code tit. 11, § .18.02.-02 (1985) (emphasis supplied). Thus the certificate of self-insurance is evidence that the self-insurer is able to meet the minimum requirements of the mandatory insurance law. Item No. 5 of PEPCO's application for self-insurance reads as follows:

5.  Indicate coverage you wish to self-insure.
    (X)  Bodily Injury
    (X)  Economic Loss
    (X)  Property Damage
    (X)  Uninsured Motorist Coverage
    (Note:  Mandatory minimum limits are $20/$40/$10, uninsured motorist coverage in like amounts and $2,500 economic loss (PIP)).

As evidenced by the marks in the parentheses and the note below the marks, the face of the application clearly indicates PEPCO's obligation to provide PIP benefits in the amount of $2,500 and UM benefits in the amount of $20,000 for a single individual. With regard to PIP and UM coverage, we see no reason to distinguish a certificate of self-insurance from a motor vehicle liability insurance policy. Indeed, by making the minimum amounts of required coverage applicable to motor vehicle liability policies as well as to all other forms of security, we think the legislature demonstrated a clear intent to treat all forms of insurance equally. Maryland Code (1984), § 17–103(a) of the Transportation Article. *See City of Baltimore v. Rose,* 47 Md.App. 481, 485, 424 A.2d 160, 162 (1981); *Modesta v. S. Eastern Pa. Transp. Auth.,* 503 Pa. 437, 445, 462 A.2d 1019, 1024 (1983).

We find nothing in the Transportation Article or in Article 48A that requires a self-insurer to provide more than the statutory minimum amounts of required coverage as set forth in §§ 539 and 541. Therefore, we hold that the obligation of a self-insurer with regard to required PIP and UM coverage is limited to the minimum required amounts, unless the self-insurer in the self-insurance application ex-

pressly obligates himself to provide more than the minimum amounts of PIP and UM coverage.

We turn next to determine what effect, if any, Hines's recovery of workmen's compensation benefits had on his right to recover PIP or UM benefits. Section 543(d) of Article 48A provides that "[b]enefits payable under the coverages required in §§ 539 and 541 of this article shall be reduced to the extent that the recipient has recovered benefits under workmen's compensation laws of any state or the federal government." As we discussed above, §§ 539 and 541 require that every motor vehicle liability policy issued, sold or delivered in Maryland contain PIP and UM coverage, respectively.

We answered part of this question in *Smelser v. Criterion Ins. Co.*, 293 Md. 384, 444 A.2d 1024 (1982). In that case Willie Leon Smelser, a mechanic, was struck by a customer's vehicle in the course of his employment. Smelser sought and recovered workmen's compensation benefits in excess of the benefits payable under the vehicle's PIP coverage. Speaking for the Court, Judge Smith held that the plain meaning of Article 48A, § 543(d) required PIP benefits to be reduced to the extent the recipient has recovered workmen's compensation benefits. *See State Farm Mut. v. Ins. Comm'r*, 283 Md. 663, 392 A.2d 1114 (1977). Because Smelser had received workmen's compensation benefits in excess of the limit of PIP coverage, he was entitled to nothing from the PIP carrier. In *Smelser*, Judge Smith observed:

> The purpose of the act is to put a limited amount of money in the hands of an injured individual under certain circumstances without regard to whether another person is liable for the injuries which the claimant sustained. Where a person is injured while covered under the Workmen's Compensation Act, this purpose has already been achieved.

293 Md. at 393, 444 A.2d at 1029.

In the instant case, Hines recovered workmen's compensation benefits of over $35,000, an amount far exceeding the

$2,500 in PIP coverage that PEPCO was required to provide under § 539. As to Hines's claim for PIP benefits, we find that *Smelser* is controlling where the claimant has recovered workmen's compensation benefits in an amount in excess of the limit of PIP coverage. Additionally, we believe that *Smelser's* reading of § 543(d), based upon the plain language of the statute, is no less applicable to benefits payable under the UM coverage required by § 541. The statute clearly provides that "[b]enefits payable under the coverage required in §§ 539 *and 541* of this article shall be reduced to the extent that the recipient has recovered benefits under workmen's compensation laws...." Art. 48A, § 543(d) (emphasis supplied). With respect to *both* PIP and UM coverage, § 543(d) demonstrates a clear and unambiguous legislative intent to require the reduction of *both* categories of benefits by the amount of workmen's compensation benefits already recovered. In the instant case, the benefits payable under PEPCO's PIP and UM coverage, $2,500 and $20,000, respectively, are reduced by the amount of workmen's compensation benefits already recovered by Hines, approximately $35,000. Because the workmen's compensation benefits recovered exceed the total of PIP and UM coverage, PEPCO, under § 543(d), has no obligation to Hines.

Hines further contends that his workmen's compensation recovery failed to compensate him for certain elements of his damages, such as pain and suffering, and that this failure entitles him to UM benefits from PEPCO. The short answer to this contention is that § 543(d) draws no distinction between damages that have been compensated for and damages that have not been compensated for. As we stated in *Smelser* with regard to wage losses that had not been compensated for, "[this] proposed interpretation would contravene the established principle of statutory construction that a court may not insert or omit words to make a statute express an intention not evidenced in its original form." *Smelser, supra,* 293 Md. at 393, 444 A.2d at 1029 (citation omitted).

With regard to GEICO's obligation to Hines, we believe that § 543(d) is controlling. Nonetheless, based upon a single provision in the GEICO policy, Hines contends that GEICO failed to construct a ceiling on its obligation to pay UM benefits to Hines. Thus GEICO is liable, Hines asserts, for the full amount of his damages, less the amount recovered in the form of workmen's compensation benefits. This contention is clearly without merit. As Chief Judge Murphy observed for the Court in *Aragona v. St. Paul Fire and Mar. Ins.*, 281 Md. 371, 378 A.2d 1346 (1977), "Insurance contracts, like other contracts, must be read as a single document and construed as a whole to ascertain what the parties really meant." *Id.* at 375, 378 A.2d at 1348 (citations omitted). Hines relies upon a provision in the GEICO policy that declares: "We will pay damages for bodily injury and property damage caused by accident which the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle...." On the very same page of the contract, however, another provision states, "The limit of liability for uninsured motorist coverage stated in the declarations as applicable to 'each person' is the limit of our liability for all damages ... due to bodily injury sustained by one person as the result of one accident." The last page of the policy, entitled "Family Automobile Policy New Business Declarations," limits the UM coverage applicable to "each person" to $20,000. Therefore, reading the policy's provisions and declarations together, we believe that UM coverage under the GEICO policy is limited to $20,000 per person. Adding the total amount of PIP coverage, $7,500, to the $20,000 in UM coverage, the maximum amount of benefits payable by GEICO to Hines is $27,500. As discussed above with regard to PEPCO, the language of § 543(d) is clear and unambiguous in requiring the reduction of PIP and UM benefits to the extent that the recipient has recovered workmen's compensation benefits. Because Hines's recovery of workmen's compensation benefits in the amount of $35,000 exceeds the maximum amount of benefits payable

by GEICO to Hines, we hold that GEICO has no obligation to Hines.

Accordingly, we conclude that neither PEPCO nor GEICO has any obligation to Hines because the amount of workmen's compensation benefits recovered by Hines exceeds the maximum PIP and UM coverage provided by PEPCO and GEICO.

JUDGMENT AFFIRMED.

APPELLANT TO PAY THE COSTS.