---

61 A.3d 50

**TRAVCO INSURANCE COMPANY**

**v.**

**Crystal WILLIAMS.**

**Misc. Docket No. 7, Sept. Term, 2012.**

Court of Appeals of Maryland.

Feb. 25, 2013.

398

Steven M. Klepper (Kramon & Graham, P.A., Baltimore, MD), on brief, for appellant.

Mark Kotlarsky, Laurel, MD, for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

GREENE, J.

We have before us questions of law certified by the United States District Court for the District of Maryland pursuant to the Maryland Uniform Certification of Questions of Law Act,

Md.Code (1973, 2006 Repl.Vol.), §§ 12–601 to 12–613 of the Courts and Judicial Proceedings Article and Maryland Rule 8–305. The District Court has asked us to determine whether Md.Code (1996, 2011 Repl.Vol.), § 19–513(e) of the Insurance Article (or " § 19–513(e)") requires an insurance company to deduct recovered workers' compensation ("WC") benefits from the benefits payable to an insured for uninsured motorist coverage ("UM") and personal injury protection ("PIP") when the insured has not reimbursed its WC provider, the WC provider claims the insured will need to reimburse it from any UM or PIP recovery, and the insured intends to reimburse the WC provider in the future. As an extension of this question, we are asked to determine the appropriate means for resolving a dispute between a PIP or UM insurer and insured regarding a WC provider's subrogation right.[1] Finally, we are asked whether § 19–513(e) permits an insurer to reduce its benefits payable for medical bill "write-downs,"[2] assuming that the "write-downs" are considered a WC benefit under the applicable WC law.

We shall hold that, under the plain meaning of § 19–513(e), an insured's benefits payable under UM and PIP coverage "shall be reduced" to the extent that the insured recovered benefits under WC and the WC provider has not been reimbursed. Further, we hold that if the applicable WC law treats "write-downs" of medical bills as WC benefits, and the WC

---

**1.** Subrogation is defined as "[t]he substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor[,]" or "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." *Black's Law Dictionary* 1467 (8th ed.2004).

**2.** A "write-down" is a "reduction of the entered value of an asset." *Webster's II New College Dictionary* 1305 (3d ed.2005). In a medical context, a "write-down" is generally the difference between the total price listed and the negotiated price for medical services. *See Tri-County Equip. & Leasing, LLC v. Klinke,* 286 P.3d 593, 594 (Nev.2012) (noting that "write-downs" refer to negotiated discounting that arises when "medical providers … accept[ ] as full payment for their services an amount less than the amount stated in their bills").

benefits have not been reimbursed, then the insurer shall deduct those benefits, calculated as discounts, from its benefits payable to the insured under § 19–513(e).

We adopt the facts of the case as set forth by the District Court in its Certification Order dated June 8, 2012:

[ ] TravCo Insurance Company ("TravCo") issued to [ ] Crystal Williams a Maryland personal auto policy, number 978435964 101 1, effective July 28, 2007 to January 28, 2008. The Policy's coverage included UM bodily injury coverage, with limits of $100,000.00 each person, and PIP coverage, with limits of $2,500.00 each person each accident. The policy's UM coverage provided that "any amounts otherwise payable for damages under this coverage shall be reduced by all sums . . . [p]aid because of the 'bodily injury' under . . . [the] worker's compensation law or similar law provided the insurer or self-insurer of worker's compensation benefits has not been reimbursed for amounts paid under the worker's compensation law or similar law." The [P]olicy's PIP coverage similarly provided: "Benefits payable by the Company under the terms of this insurance to or on behalf of an 'injured person' shall be reduced to the extent that benefits therefore are paid, to or on behalf of the 'injured person' under any worker's compensation law of any state or the Federal Government."

At all relevant times, Ms. Williams was employed by the District of Columbia government. On August 2, 2007, Ms. Williams was a passenger in a District of Columbia government's vehicle driven by her supervisor. They were traveling on a work assignment. Their vehicle was rear-ended by an unknown driver. Ms. Williams was stunned by the impact. While she was sitting in the vehicle trying to recover, her supervisor told the other driver to leave the scene. The driver responsible for the accident left and no information about him is known. Ms. Williams was injured in the accident. She missed nine weeks of work and her loss of [ ] earning capacity was $10,476.00. She incurred $13,096.50 in medical expenses and received a 22% disability rating.[1]

The medical invoices provided by Ms. Williams to TravCo indicate that her medical providers applied WC "write-downs," totaling at least $3,591.53.

The District of Columbia government's WC third-party administrator asserts a subrogation right in the amount of $11,043.60 against any PIP or UM recovery by Ms. Williams. Ms. Williams intends to reimburse the District of Columbia government, although TravCo disputes her obligation to do so. The amount that Ms. Williams would reimburse the District of Columbia government cannot be determined before the settlement or judgment with TravCo, and Ms. Williams has no funds to reimburse the District of Columbia government out of pocket.

TravCo does not dispute that Ms. Williams' claims fall within the PIP or UM insuring agreements. Nevertheless, disputes regarding the effect of Section 19–513(e) have prevented settlement of her claims.

[1] The parties have not conducted discovery. TravCo does not dispute the facts in this paragraph solely for purposes of the present certification proceeding.

In light of the necessary interpretation of § 19–513(e) to resolve this issue, the District Court certified the following questions of law to this Court:

1. Does Section 19–513(e) of the Insurance Article, providing that uninsured motorist ("UM") and personal injury protection ("PIP") benefits "shall be reduced to the extent that the recipient has recovered benefits under the workers' compensation ['WC'] laws of a state or the federal government for which the provider of the [WC] benefits has not been reimbursed," apply where the insured has not to date reimbursed the WC provider but the WC provider claims that the insured will need to reimburse it from any UM or PIP recovery?

2. If the answer to the first question is "yes," what is the appropriate means to resolve a dispute between the insurer and insured as to the validity and extent of a WC provider's subrogation right? [2]

3. If the law applicable to the underlying automobile accident and to the WC claim treats "write-downs" of medical bills as WC benefits, do such "write downs" reduce the benefits payable under Section 19–513(e) of the Insurance Article? [3]

 [2] The parties have phrased this question broadly to encompass a number of sub-disputes, including how "an amount equivalent to a reasonable attorney's fee proportionate to the refund to the District of Columbia government" under D.C.Code § 1.623.32 is categorized for purposes of Section 19–513(e) of the Insurance Article.

We note that under the Maryland Code, this Court "may reformulate a question of law certified to it." Md.Code (1973, 2006 Repl.Vol.), § 12–604 of the Courts and Judicial Proceedings Article. Accordingly, we shall redact the first part of Question Two to reflect the appropriate question of law presented by the parties: What is the appropriate means to resolve a dispute between the insurer and insured as to the validity and extent of a WC provider's subrogation right?

## I.

 The issue in the present case is the correct interpretation of Md.Code (1996, 2011 Repl.Vol.), § 19–513(e) of the Insurance Article, which provides:

**§ 19–513. Limitations on recovery of benefits.**

(e) *Reduction due to workers' compensation benefits.*—Benefits payable under the coverages described in §§ 19–505 and 19–509 of this subtitle shall be reduced to the extent that the recipient has recovered benefits under the workers' compensation laws of a state or the federal government for

---

**3.** The District Court also certified a fourth question to this Court. On July 20, 2012, the parties submitted a joint motion to strike the question, however, because they determined that the question could be resolved by a previous decision of this Court. *See* Md.Code (1973, 2006 Repl.Vol.), § 12–603 of the Courts and Judicial Proceedings Article (noting that this Court "may answer a question of law certified to it ... [if] there is no controlling appellate decision, constitutional provision, or statute of this State"). This Court granted the motion to strike the fourth certified question on July 20, 2012.

which the provider of the workers' compensation benefits has not been reimbursed.

The noted provisions within the statute refer to Maryland laws involving PIP, Md.Code (1996, 2011 Repl.Vol., Supp.2012), § 19–505 of the Insurance Article, and UM, Md. Code (1996, 2011 Repl.Vol.), § 19–509 of the Insurance Article. PIP is a form of no fault insurance, that allows the insured to recover for medical expenses and lost income resulting from a motor vehicle accident. *See Swartzbaugh v. Encompass Ins. Co.*, 425 Md. 614, 617, 42 A.3d 587, 589 (2012); § 19–505. Its main purpose "is to assure financial compensation to victims of motor vehicle accidents without regard to the fault of a named insured or other persons entitled to PIP benefits." *Clay v. GEICO*, 356 Md. 257, 265–66, 739 A.2d 5, 10 (1999) (citations and quotation omitted). UM is a form of first-party coverage that allows an insured to collect even when the at-fault tortfeasor has no liability insurance or insufficient insurance funds. *See Reese v. State Farm Mut. Auto. Ins. Co.*, 285 Md. 548, 552, 403 A.2d 1229, 1231–32 (1979); § 19–509. "[T]he purpose of mandating UM coverage is to provide some measure of compensation to the innocent victims of financially irresponsible uninsured motorists." *Hines v. Potomac Elec. Power Co.*, 305 Md. 369, 374, 504 A.2d 632, 634 (1986) (citations omitted).

TravCo argues that § 19–513(e) unambiguously requires an insurer to reduce PIP and UM benefits wherever the insured "has recovered" WC benefits, and the benefit provider has not yet been repaid for those benefits. Under this theory, TravCo contends, it is required to reduce Ms. Williams's insurance benefits because she received WC benefits from the District of Columbia and has not yet reimbursed the District for those benefits. According to TravCo, this interpretation of § 19–513(e) makes sense because UM and PIP benefits are intended to provide some means of protective compensation to the insured if other means are unavailable or not immediately available, and that purpose has already been somewhat achieved when WC benefits have been recovered. Finally, TravCo argues that, if the plain meaning of § 19–513(e) leads to unjust outcomes to the insured, the General Assembly has

the option of amending the statute to more appropriately reflect the legislature's intentions. In fact, TravCo notes, that "[s]ince 1999, the General Assembly has passed six amendments to the UM and PIP statutes, including the 2001 amendment [to § 19–513(e) ]."

Ms. Williams contends that she will reimburse the District of Columbia for her WC benefits, either because she is required to do so under District law, or, in the alternative, because she intends do so voluntarily. Therefore, she argues, she should not incur a reduction in her settlement or judgment proceeds from TravCo under § 19–513(e). Her claim is based on both the statute's purpose and "the conclusion that the legislature could not have intended bizarre practical results" that would follow from TravCo's interpretation of the statute. According to Ms. Williams, the statute is intended to prevent windfall to the insured, not to create obstacles to fair recovery just because the injured party was involved in a work-related accident.[4] Ms. Williams further asserts that the General Assembly made this clear when it amended the statute in 2001 to allow insurance companies to reduce their UM and PIP payout *only* to the extent that the WC benefits have not yet been reimbursed.[5] The 2001 amendment, Ms. Williams contends, is "remedial legislation, which should be interpreted broadly in favor of the injured worker[ ]." Finally, Ms. Williams argues that TravCo's interpretation of the statute leads to impractical results because if an insured cannot afford to reimburse his or her WC provider before the insured receives his or her UM or PIP benefits, the insured is

---

**4.** To illustrate this point, Ms. Williams maintains that if an individual were injured in a non-work-related accident, the individual would be entitled to recover both from the tortfeasor and from his or her insurance carrier for PIP benefits even though the recovery may be duplicative.

**5.** In her brief, Ms. Williams cites to the preamble to the 2001 amendment: "[f]or [the] purpose of limiting the reductions available to personal injury protection and uninsured motorist insurers to the extent that the workers' compensation insurer is able to recover benefits paid under the workers' compensation laws of a state o[r] [the] federal government ...."

penalized by receiving a lower sum from the insurance company, which is further reduced by any required future reimbursement to the WC provider. As such, the General Assembly, Ms. Williams contends, could not have "intended the 'reimburs[ement]' clause of [§] 19–513(e) to apply only if an injured worker repays the workers compensation carrier prior to the settlement or judgment."

As this case requires us to interpret the meaning of a Maryland statute, we apply our longstanding principles of statutory construction. In *State Farm Mut. Auto. Ins. Co. v. Ins. Comm'r*, 283 Md. 663, 670, 392 A.2d 1114, 1117–18 (1978) [hereinafter *State Farm* ], we discussed statutory interpretation principles with reference to the predecessor of the statute at issue in the present case. We explained:

> The cardinal rule of statutory construction is to ascertain and carry out the real legislative intention. A statute should be construed according to the ordinary and natural import of the language used without resorting to subtle or forced interpretations for the purpose of limiting or extending its operation. That is, we must confine ourselves to the statute as written, and may not attempt, under the guise of construction, to supply omissions or remedy possible defects in the statute. Thus, if there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the Legislature .... [W]here statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, courts are not at liberty to disregard the natural import of words with a view toward making the statute express an intention which is different from its plain meaning.

*Id.* (citations and quotations omitted).

The predecessor to § 19–513(e), Md.Code, Art. 48A, § 543(d), provided that PIP and UM benefits "shall be reduced to the extent that the recipient has recovered benefits under [WC] laws of any state or the federal government." Md.Code, Art. 48A, § 543(d) (1957, 1972 Repl.Vol., 1978 Cum. Supp.). We explained that § 543(d) was "plain and unambigu-

ous." *See State Farm,* 283 Md. at 671, 392 A.2d at 1118 (holding that the statute's plain meaning required the insurer to reduce PIP benefits payable to its insured by the amount that the insured received under WC). This Court reaffirmed that statement as to § 19–513(e)'s predecessor statute in later cases. *See Hines,* 305 Md. at 377–78, 504 A.2d at 636–37 (noting that the language of the statute "is clear and unambiguous in requiring the reduction of PIP and UM benefits to the extent that the recipient has recovered [WC] benefits"); *Smelser v. Criterion Ins. Co.,* 293 Md. 384, 385, 444 A.2d 1024, 1025 (1982) (explaining that the statute "means precisely what it says when it specifies that … [PIP benefits] are to be reduced to the extent that a recipient has recovered sums pursuant to [WC laws of any state]").

In *State Farm,* we were asked to determine whether an insurance company could deduct the monetary payments a claimant received under WC, even though the claimant already reimbursed the WC provider. We focused our inquiry on what the term "has recovered" meant as it was used in the statute. *State Farm,* 283 Md. at 671–72, 392 A.2d at 1118. In other words, we were asked to interpret whether, under the statute, the claimant "recovered" the WC benefits, even though he repaid that money to the WC provider. Noting that the dictionary defined "to recover" as "to get," "to obtain," "to come into possession of," "to receive," "to succeed in a [legal] proceeding," and "to obtain in any legal manner in contrast to voluntary payment," we held that under those meanings, the insured had "recovered" WC benefits when he received the money from his WC provider as a result of his claim. *Id.* (citations omitted). Therefore, under the statute, the insurer was required to reduce the benefits payable to the insured by the amount of WC benefits the insured had received.

We were asked to interpret the statute again in *Gable v. Colonial Ins. Co.,* 313 Md. 701, 548 A.2d 135 (1988). In that case, an insurance company claimed that its policy provision which stated that it could deduct PIP benefits by the amount the insured *may be entitled to recover in the future under WC*

*law,* allowed it to deduct the WC benefits the insured would have gotten, even though the insured party never received such WC benefits. *Gable,* 313 Md. at 702, 548 A.2d at 135–36. We explained that the term "has recovered" in the statute, referred, in the past tense, to WC benefits "actually received." Further, we noted that

> [t]he language of § 543(d) shows a legislative intent to provide offsets only for workmen's compensation benefits actually received and not for future benefits. The subsection provides for a deduction only for workmen's compensation benefits that the claimant "has recovered." The General Assembly drew a sharp distinction between workmen's compensation benefits which have been received and those benefits which have not.

*Gable,* 313 Md. at 704, 548 A.2d at 136–37. This statute, we explained, stood in sharp contrast to the language in similar statutes in other states, allowing, for example, benefits to be reduced for WC benefits "recovered or *recoverable." See Gable,* 313 Md. at 706, 548 A.2d at 137–38 (citing NY. Ins. Law § 5102(b)(2) (Consol.1985)). "[T]he absence of the word 're-coverable' in the Maryland statute indicates that in Maryland the insurer's right to offset workmen's compensation benefits is contingent upon their receipt." *Gable,* 313 Md. at 706, 548 A.2d at 138. As such, we held that the insurer could not reduce its PIP payout by the WC amount that the insured never received.

In 2001, the General Assembly amended the statute and created an exception for benefits reimbursed to the WC provider. As such, the amended statute stated that insurers shall reduce benefits payable under UM and PIP to the extent that the recipient has recovered WC benefits "*for which the provider of the workers' compensation benefits has not been reimbursed.*" § 19–513(e) (emphasis added), 2001 Md. Laws, Chap. 392. In other words, insurers shall reduce PIP and UM benefits payable to the extent the recipient recovers unreimbursed workers' compensation benefits.

In *Parry v. Allstate Ins. Co.*, 408 Md. 130, 968 A.2d 1053 (2009), we addressed the 2001 amended statute. *Parry* involved a UM claim by the estate of a police officer who died as a result of injuries sustained in an accident while on-duty. On its own initiative, the officer's employer paid the medical bills pursuant to WC law. Thereafter, the officer's estate filed a claim for UM benefits and the insurer sought a declaration that its liability for UM benefits be reduced by the officer's recovered WC benefits that had not been reimbursed under § 19-513(e). *Parry*, 408 Md. at 132–35, 968 A.2d at 1054–56. In our analysis, we first reviewed our caselaw in light of the predecessor section of the statute, stating that its language was unambiguous. *Parry*, 408 Md. at 140–43, 968 A.2d at 1059–60. We then explained that the current law is "nearly identical[ ]," and that the added exception for situations where the WC provider "has not been reimbursed" did not alter the analysis in *Parry*, likely because there was no reimbursement to the WC provider. *See Parry*, 408 Md. at 143 & n. 6, 147, 968 A.2d at 1060–61 & n. 6, 1063. We held that under both versions of the statute, insurers are *required* to reduce PIP and/or UM benefits payable "to the extent the recipient recovers un-reimbursed workers' compensation benefits," regardless of the fact that no formal WC claim may have been filed. *Parry*, 408 Md. at 145–47, 968 A.2d at 1062–63.

Similar to what we said in *Smelser*, "[t]he statute here is as clear and unambiguous today as it was when it was before the Court in *State Farm*," and the additional language "in no way changes that view." *Smelser*, 293 Md. at 393, 444 A.2d at 1029. The critical words in the 2001 amendment to the statute are "for which the provider of the [WC] benefits has not been reimbursed." In a case also dealing with the current version of this statute, the intermediate appellate court, in maintaining that the statute was unambiguous, noted that

[t]he word "reimbursement" is commonly understood to mean "repayment." A "useful starting point" in determining the plain meaning of a statutory term is that term's dictionary definition. *Comptroller of the Treasury v. Sci. Applications Int'l Corp.*, 405 Md. 185, 202, 950 A.2d 766

(2008) (*quoting Ishola v. State*, 404 Md. 155, 160, 945 A.2d 1273 (2008)). The *Merriam–Webster Dictionary* defines "reimburse" as "1. to pay back to someone; repay. 2. To make restoration of or equivalent to." The *American Heritage College Dictionary* defines "reimburse" as "1. to repay (money spent); refund. 2. To pay back or compensate (another party) for money spent or losses incurred."
*Blackburn v. Erie Ins. Grp.*, 185 Md.App. 504, 514, 971 A.2d 368, 374–75 (2009). Similarly, *Black's Law Dictionary* defines "reimbursement" as "1. Repayment. 2. Indemnification." *Black's Law Dictionary* 1290 (7th ed.1999).

Furthermore, in interpreting this statute we must not forget the lessons learned in grammar school. Namely, the clause for which we are interpreting is phrased in the present perfect verb tense: "... [the benefits] shall be reduced to the extent that the recipient has recovered benefits under the [WC] laws of a state ... for which the provider of the [WC] benefits *has not been reimbursed*." § 19–513(e) (emphasis added). The present perfect tense describes the use of an auxiliary verb or verb phrase preceding a past participle of the verb, in this case, "has not been reimbursed." *The New York Public Library Writer's Guide to Style and Usage* 149 (1st ed.1994). Such construction is used to indicate "[a]ction that began in the past and leads up to and includes the present." Muriel Harris, *Prentice Hall Reference Guide to Grammar and Usage* 9 (2d ed.1994). Therefore the phrase "has not been reimbursed," means that the reimbursement has not yet occurred.

Additionally, the phrase "has not been reimbursed" mirrors other language in the statute that we have interpreted in the past. Specifically, in *Gable*, we explained that the term "has recovered," referred to WC benefits "actually received ... not [ ] future benefits[,]" and that the use of the term "has recovered," coupled with the absence of the word "recoverable" in the statute "indicate[ ] that ... the insurer's right to offset [WC] benefits is contingent upon [the insured's] receipt [of the WC benefits]." *Gable*, 313 Md. at 704, 706, 548 A.2d at 136–38. Following this method of interpretation, in the pres-

ent case, the WC provider must have been actually reimbursed, and mere reimbursement in the future is insufficient under the statute. Furthermore, the statute does not include other forms of the verb "reimburse," such as "reimbursable" or "shall not be reimbursed," *i.e.,* "for which the provider of the WC benefits *will not be* reimbursed," further indicating that future reimbursement does not qualify for the exception. *Cf. Gable,* 313 Md. at 706, 548 A.2d at 137–38 (noting that the use of the term "has recovered" in the statute over other forms of the verb "recover," such as "recoverable," show the General Assembly's intention "to allow offsets only for those [WC] benefits which have been actually received").

Under the plain meaning of the statute, therefore, the "reimbursement" to the WC provider must have occurred in the present, or have occurred in the past, for the previously-compensated insured to avoid the statutory PIP and/or UM reduction by the insurer. The facts of the present case indicate that Ms. Williams "has recovered" WC benefits, and her WC provider "has not been reimbursed" for those benefits. As such, under the plain meaning of § 19–513(e), the insurer shall reduce UM and PIP benefits to the extent of the recipient's un-reimbursed WC benefits. *Parry,* 408 Md. at 146–47, 968 A.2d at 1062–63.

TravCo's position in the instant case, "in addition to being supported by the clear statutory language and the reported decisions [of this Court], is also confirmed by the legislative purpose underlying [the statute]." *State Farm,* 283 Md. at 674, 392 A.2d at 1120; *see also Mayor of Balt. v. Chase,* 360 Md. 121, 131, 756 A.2d 987, 993 (2000) (citations omitted) (noting that even when the language in a statute is unambiguous, this Court, "in the interest of completeness," may explore the statute's legislative history as a form of confirmation). In *Parry,* we explained that "the intent of § 19–513(e) (as interpreted under the predecessor to Ins. § 19–513(e), Md.Code, Art. 48A § 543(d) (1957, 1972 Repl.Vol., 1978 Cum.Supp.)) is to restrict the duplication of insurance benefits in several respects, one of which in subsection (d) is the reduction of PIP[/UM] benefits to the extent that the claimant recovered

workmen's compensation benefits." *Parry*, 408 Md. at 137–38, 968 A.2d at 1057 (quotation omitted) (citing *State Farm*, 283 Md. at 675, 392 A.2d at 1120). In the present case, Ms. Williams recovered WC benefits, and the statute calls for a reduction of PIP and UM benefits to the extent that such WC benefits were recovered and un-reimbursed.

The legislative intent discussed above is not changed by the addition of the "reimbursement" clause in 2001. The amendment was enacted "[f]or the purpose of limiting the reductions available to personal injury protection and uninsured motorist insurers to the extent that the [WC] insurer is able to recover benefits paid under the [WC] laws of a state or the federal government." 2001 Md. Laws, Chap. 392. As the Court of Special Appeals opined in *Blackburn v. Erie Ins. Grp.*, the 2001 amendment sought to remedy the type of situation that was before this Court in *State Farm*. *Blackburn*, 185 Md.App. at 510, 971 A.2d at 372. Namely, under the former version of the statute, the insurer was able to reduce its PIP and UM benefits to the insured by the amount of WC recovery the insured received, despite the fact that the insured had already reimbursed the WC provider. *See State Farm*, 283 Md. at 675, 392 A.2d at 1120. "To remedy that [result], section 19–513(e) was amended to allow the carrier to deduct only the monies that the insured had not already paid back." *Blackburn*, 185 Md.App. at 512, 971 A.2d at 373. The present case is distinctly different from the facts of *State Farm*, because unlike the situation in *State Farm*, the WC provider in the present case was not reimbursed.

In light of our answer to Question 1, it is unnecessary to reach Question 2 regarding the appropriate means of resolving a dispute between TravCo and Ms. Williams as to the WC provider's subrogation right. The plain meaning of the statute's language controls, regardless of any claim by the WC provider that the insured will need to reimburse it from any PIP or UM recovery. Furthermore, we do not resolve what the District of Columbia is entitled to recover under its right to subrogation. Our responses are limited to an interpretation of Maryland law.

## II.

 We next address whether, assuming that the law applicable to the underlying automobile accident and to the WC claim treats "write-downs" of medical bills as WC benefits, such "write-downs" would reduce the benefits payable under § 19–513(e) of the Insurance Article.

Based on our interpretation of § 19–513(e) above, we hold that: (1) assuming the District of Columbia treats such "write-downs" as WC benefits; (2) Ms. Williams received such benefits; and (3) the WC provider has not been reimbursed,[6] TravCo shall reduce the UM[7] benefits payable to Ms. Williams. This holding is derived from the unambiguous language of the statute, specifically, that "[b]enefits payable under the coverages described in [PIP] and [UM] . . . shall be reduced to the extent that [Ms. Williams] has recovered benefits under the [WC] laws of a state . . . for which the provider of the workers' compensation benefits has not been reimbursed." Assuming, *arguendo*, that the "write-downs" were the actual benefits paid out by the WC provider and recovered by Ms. Williams under the WC laws of the District of Columbia, the UM benefits, which Ms. Williams is entitled to receive, shall be reduced to the extent that the "write-downs" were un-reimbursed.

**CERTIFIED QUESTIONS OF LAW ANSWERED AS SET FORTH ABOVE. COSTS TO BE DIVIDED EQUALLY BY THE PARTIES.**

---

6. The question of whether "reimbursement" constitutes acceptance of repayment of the total benefits paid or a lesser amount in full satisfaction of the WC provider's right to seek reimbursement is not before us. *See Blackburn v. Erie Ins. Grp.*, 185 Md.App. 504, 514, 971 A.2d 368, 375 (2009) (footnote omitted).

7. TravCo acknowledges that "write-downs" "are not within PIP coverage in the first instance." Therefore, according to TravCo, with regard to Ms. Williams's PIP claim, medical "write-downs" do not come into play.