968 A.2d 1053

Lynne PARRY, Personal Representative of the
Estate of Mark Parry, Deceased, et al.

v.

ALLSTATE INSURANCE COMPANY.

No. 83, Sept. Term, 2008.

Court of Appeals of Maryland.

April 6, 2009.

Henry L. Belsky (Schlachman, Belsky & Weiner, P.A., Baltimore), on brief, for Petitioners.

Thomas J. Dolina (Winn C. Friddell and Tracy M. Proietti, Towson), on brief, for Respondent.

Argued Before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, BARBERA and ALAN M. WILNER (Retired, specially assigned), JJ.

HARRELL, Judge.

Maryland Code, Insurance Art. § 19–513(e) provides that uninsured/underinsured motorist ("UM/UIM") benefits are to be reduced to the extent the recipient recovers related benefits under workers' compensation laws for which the provider of the workers' compensation benefits has not been reimbursed. Md.Code, Ins. § 19–513(e) (2006 Repl.Vol. & Supp. 2008). The issue presented in this case is whether, under Ins. § 19–513(e), the un-reimbursed medical expenses paid on behalf of an employee by his/her employer, pursuant to workers' compensation requirements, may be deducted by the employee's private insurance carrier from his UM/UIM policy coverage benefits if the employee never filed or pursued independently a formal workers' compensation claim. The Circuit Court for Baltimore County, ruling on Respondent Allstate Insurance Co.'s ("Allstate") petition for declaratory judgment, concluded that the un-reimbursed medical expenses paid on

behalf of County Police Officer Mark Parry by his employer, Baltimore County (or its insurer), pursuant to workers' compensation law, reduced to zero the UM/UIM policy liability of Allstate to Petitioner Lynne Parry (wife of Officer Parry, and personal representative of his estate) (the "Parrys"), even though the Parrys later elected the statutory remedy of bringing an action in tort against the tortfeasor, rather than filing a workers' compensation claim. In an unreported opinion, the Court of Special Appeals affirmed. We issued a writ of certiorari upon the Parrys' petition. *Parry v. Allstate*, 406 Md. 112, 956 A.2d 201 (2008). For the reasons that follow, we shall make the responses of the judicial system unanimous.

## I. FACTUAL BACKGROUND

On 27 December 2001, Officer Mark Parry's police vehicle (with him at the wheel) was struck by a vehicle driven by Cesar Humberto Meza. Parry was on duty with the Baltimore County Police Department at the time. As a result of the accident, Officer Parry was transported to University of Maryland Medical Center in Baltimore, where he received medical care for his injuries suffered in the collision. He succumbed to those injuries on 21 January 2002. During this period of medical care, Officer Parry incurred medical expenses totaling $168,169.87.

On its initiative, Baltimore County, as Officer Parry's employer, responded quickly to his and his family's predicament. It initiated the necessary steps to pay the expenses of Parry's medical care. On 28 December 2001, a claims adjuster in the County's Workers' Compensation Claims Management Unit ("CMU") assigned a case manager to prepare the requisite paperwork for handling the expenses as workers' compensation benefits, contacted the Medical Center on behalf of the County, and identified and obtained information regarding Meza's third-party insurance policy coverage from Meza's insurer, GEICO. Three days later (and four days after the accident), the CMU, through an intermediary, presented to

Lynne Parry, Officer Parry's wife, an Authorization for Release of Medical Information form,[1] which permitted the CMU to provide benefits to cover the cost of all medical bills incurred by Officer Parry as a result of the accident. She signed and returned the form.[2] On 11 January 2002, based on its internal handling of the situation, the CMU notified the Baltimore County Police Department that it was accepting Officer Parry's claim and authorizing the payment of the expenses for his medical care. All of Officer Parry's $168,169.87 medical expenses subsequently were paid by the County (or its insurer).

GEICO's insurance policy for Meza's vehicle contained third-party liability coverage of $20,000/$40,000. Under their private insurance policy with Allstate, the Parrys had UM/UIM coverage of $100,000. The Parrys' policy included a provision, however, reducing the amount of UM/UIM benefits

---

1. The one page Authorization form, presented to and executed by Mrs. Parry on 31 December 2001, in addition to authorizing release to the CMU of medical information and records regarding Officer Parry, contained at its end (just above the signature line) a paragraph reading as follows:

   This authorization is subject to the requirement that the requestor sends a copy of the transmittal letter to the Claimant and his/her attorney and that a copy of all material received pursuant to this authorization is promptly supplied to the claimant or his/her attorney, as is required by the regulations of the Workers' Compensation Commission.

2. The purpose of the Authorization for Release of Medical Information form was discussed on direct examination of Stephen Pohl (the Senior Claims Adjuster in the CMU who handled Officer Parry's matters in that unit) by counsel for Allstate (the Parrys' insurer) in the later declaratory judgment action:

   "Q: Do you recognize this document?
   A: Yes.
   Q: What is it?
   A: It's a signed authorization for the release of medical records. It's signed by Mrs. Parry.
   . . .
   A: I can't pay the medical bills without the records. And so that's when—that's the purpose of the medical authorization is to be able to obtain the records that go with the invoices. Often I received invoices without records and they can't be paid until I obtain them."

payable to the extent of amounts paid by certain other sources. That provision provided:

Damages payable will be reduced by

1. all amounts paid by the owner or operator of the uninsured auto or anyone else responsible. This includes all sums paid under the bodily injury liability coverage or property damage liability coverage of this or any other auto policy.

2. all amounts payable under any workers compensation law, disability benefits law, or similar law, Automobile Medical Payments, or any similar automobile medical payments coverage.

The limits payable will be reduced by all amounts paid by the owner or operator of the underinsured auto.

The Parrys settled their claim against Meza for the $20,000 limit under his GEICO policy. On behalf of her late husband's estate, herself, and their three minor children, Mrs. Parry filed a claim for UM/UIM benefits with Allstate. Mrs. Parry demanded $80,000 from Allstate under her family's UM/UIM coverage, representing the limit of the policy coverage minus the payment received from GEICO. In response, Allstate filed in the Circuit Court for Baltimore County a declaratory judgment action under Md.Code, Cts. & Jud. Proc. Art. § 3–406 (2006 Repl.Vol. & Supp.2008) seeking a declaration that Allstate's liability for UM/UIM benefits under the Parrys' policy should be reduced by the benefits paid for Officer Parry's medical expenses by the County (or its insurer). After a bench trial, the Circuit Court agreed with Allstate. The trial court explained that the County's payment of medical expenses qualified as "benefits ... paid ... under the workers' compensation laws." Because the $168,169.87 paid by the County exceeded the $80,000 in remaining coverage under the UM/UIM portion of Allstate's policy, the Parrys were not entitled to recover any benefits or damages from their carrier. As noted earlier, the Court of Special Appeals agreed with this judgment.

## II. DISCUSSION

Md.Code, Lab. & Empl. Art. § 9–901 (2008 Repl.Vol.) grants persons injured on the job a choice of remedies when their injury is caused by a third party who is not their employer. That section provides

When a person other than an employer is liable for the injury or death of a covered employee for which compensation is payable under this title, the covered employee or, in case of death, the personal representative or dependents of the covered employee may:

(1) file a claim for compensation against the employer under this title; or

(2) bring an action for damages against the person liable for the injury or death or, in case of joint tort feasors, against each joint tort feasor.

Md.Code, Lab. & Empl. § 9–901. In those situations in which the person injured on the job brings an action against and recovers damages from the third-party tortfeasor, following a workers' compensation award or payment of compensation, § 9–902 prevents the person from receiving a windfall recovery from both sources for the same damages. Section 9–902(e) provides

(e) Distribution of damages. If the covered employee or the dependents of the covered employee recover damages, the covered employee or dependents:

(1) first, may deduct the costs and expenses of the covered employee or dependents for the action;

(2) next, shall reimburse the self-insured employer, insurer, Subsequent Injury Fund, or Uninsured Employers' Fund for:

(i) the compensation already paid or awarded; and

(ii) any amounts paid for medical services, funeral expenses, or any other purpose under Subtitle 6 of this title; and

(3) finally, may keep the balance of the damages recovered.

Md.Code, Lab. & Empl. § 9–902.

█ When the injured employee elects to bring a third party tortfeasor action, but cannot be made whole because the third party tortfeasor is either uninsured or underinsured, the employee may invoke the UM/UIM benefits provided in his or her insurance policy to attempt to cover the difference (subject, of course, to policy limits). *See Revis v. Md. Auto. Ins. Fund*, 322 Md. 683, 688, 589 A.2d 483, 485 (1991) ("Where the workers' compensation recovered by the insured is less than the total of the amounts due the insured under the PIP [Personal Injury Protection] and UM coverages, the insured is entitled to the difference."). Under Md.Code, Ins. § 19–513, however, the amount of benefits payable under UM/UIM policy coverage to employees in such situations is to be reduced to the extent of funds paid in workers' compensation benefits that are not reimbursed otherwise. Ins. § 19–513(e) provides specifically:

(e) Reduction due to workers' compensation benefits. Benefits payable under the coverages described in § § 19–505 and 19–509 [the section providing for UM coverage] of this subtitle shall be reduced to the extent that the recipient has recovered benefits under the workers' compensation laws of a state or the federal government for which the provider of the workers' compensation benefits has not been reimbursed.

Thus, as we opined in *State Farm Mut. Auto. Ins. Co. v. Ins. Comm'r*, 283 Md. 663, 392 A.2d 1114 (1978),[3] the intent of § 19–513(e) (as interpreted under the predecessor to Ins. § 19–513(e), Md.Code, Art. 48A § 543(d) (1957, 1972 Repl.Vol., 1978 Cum.Supp.)) is to "restrict the duplication of insurance benefits in several respects, one of which in subsection (d) is the reduction of PIP[/UM] benefits to the extent that the

---

**3.** A procedural ruling in *State Farm*, 283 Md. 663, 392 A.2d 1114, not relevant to the present case, was superseded by statute, 1995 Md. Laws Ch. 36.

**138**

claimant recovered workmen's compensation benefits." *State Farm,* 283 Md. at 675, 392 A.2d at 1120.

The Parrys' main argument before this Court is that the Circuit Court's holding, which found that the expenses paid on behalf of Officer Parry by the County (or its insurer) are to be deducted from the UM/UIM coverage as "benefits ... paid ... under the workers' compensation laws," undermines the grant to the Parrys to make a statutory election, under Lab. & Empl. § 9–901, either to bring a workers' compensation claim or an action for damages against the tortfeasor. The Parrys, in their brief, charge:

> No workers' compensation claim was filed on behalf of Officer Parry and therefore, no workers' compensation benefits under the workers' compensation law of Maryland have been "recovered" by.[the Parrys]. . . . [T]he plain and unambiguous meaning of "has recovered" dictates that [Allstate] *cannot* be permitted a reduction of the Parrys' uninsured motorists benefits because no workers' compensation benefits have been received by them through initiation of a workers' compensation claim.
>
> An injured worker's election to pursue the tort-feasor and not file a workers' compensation claim has substantial consequences in that such an election bars any future workers' compensation claim by the injured worker. . . . In the present matter, [the Parrys'] election of remedies invoked this consequence. Stephen Pohl, senior claims adjuster for Baltimore County, specifically testified at the declaratory judgment hearing that Petitioners had no future right to pursue any workers' compensation benefits against Baltimore County because of Mrs. Parry's election of remedies. Specifically, Petitioners' election of the tort remedy precluded their workers' compensation dependency claims in this matter which would have been substantial for both Mrs. Parry and her children.
>
> The [lower courts' decisions], however, disregard[ ] the substantial impact that [the Parrys'] election of remedy had to their potential claims, and effectively grants the insurer a loophole to avoid paying pursuant to the policy in the event

that an employer acts to institute medical payments for any injured worker on its own initiative and without the worker's election of a workers' compensation remedy. This conclusion eliminates an injured worker's right to elect a remedy pursuant to [Lab. & Empl.] § 9–901 and punishes the injured worker by leaving him without recourse for electing to pursue the tortfeasor when unbeknownst to the employee, payments are made by his employer which will be deemed to bar his recovery under circumstances as exist in this matter. Such a conclusion is contrary to both common sense and public policy, which should provide recourse for emergency personnel killed in the line of duty pursuant to their statutory right to elect a remedy in order to avoid a chilling effect on the willingness of such emergency responders to act.

(internal citations and footnote omitted) (emphasis in original).

Allstate counters that, "[a]lthough the Petitioners did not file a formal claim for workers' compensation benefits with the Commission, the burden is on Baltimore County to comply with the [workers' compensation laws]," and under those laws, "the liability of the employer to make workers' compensation payments for injuries to the worker is fixed at the time of the accident." *See* Md.Code, Lab. & Empl. § 9–660 ("In addition to the compensation provided under this subtitle, if a covered employee has suffered an accidental personal injury . . . the employer or its insurer promptly shall provide to the covered employee, as the Commission may require . . . medical, surgical, or other attendance or treatment. . . . The employer or its insurer shall provide the medical services and treatment required under subsection (a) of this section for the period required by the nature of the accidental personal injury. . . ."); COMAR 14.09.01.09(B) (2009) ("An employer or insurer may pay or contest charges for medical and other services under Labor and Employment Article, Title 9, Subtitle 6, Part IX or Part XIII, even if the employee does not file a claim, but shall pay uncontested charges promptly after receipt."). The County reacted promptly to Officer Parry's accident by reporting the compensable injury to the CMU and paying (or having its

insurer pay) the medical expenses following receipt of the requisite Authorization for Release of Medical Information signed by Mrs. Parry. Accordingly, Allstate argues that the

> fact that the employee did not file a claim does not change the fact that the benefits were payable under the [Workers' Compensation] Act and benefits provided to Petitioners were recovered upon receipt and retention. Thus, as a matter of law, Petitioners have recovered benefits under the Act [Ins. § 19–513(e) ] for payment of the medical bills and disability compensation[ [4]] resulting from compensable injuries suffered in the accident during the course of employment.

■ We agree with the trial court's declaratory judgment in favor of Allstate, and the intermediate appellate court's affirmance of that judgment, concluding that Allstate has no liability under the UM/UIM coverage of the Parrys' policy because the Parrys "recovered benefits under the workers' compensation laws of [Maryland]" in excess of the UM/UIM policy limit. Md.Code, Ins. § 19–513(e).

The operative language of the predecessor section to Md. Code, Ins. § 19–513(e) (Md.Code, Art. 48A, § 543(d) (1957, 1972 Repl.Vol., 1978 Cum.Supp.) [5]) was described by this Court as "plain and unambiguous." *State Farm*, 283 Md. at 671, 392 A.2d at 1118. This view was reaffirmed in *Smelser v. Criterion Insurance Co.*, where the Court interpreted § 543(d) as applicable to a claim for PIP benefits, despite the payment of benefits under the Workmen's Compensation Act:

---

4. The County (or its insurer) also paid a small amount of disability benefits while Officer Parry was hospitalized. No issues regarding those payments were raised for the purposes of this appeal.

5. Md.Code, Art. 48A, § 543(d) (1957, 1972 Repl.Vol., 1978 Cum.Supp.) provided:

> Benefits payable under the coverages required in §§ 539[PIP] and 541[UM] of this article shall be reduced to the extent that the recipient *has recovered* benefits under workmen's compensation laws of any state or the federal government.

*State Farm*, 283 Md. at 671, 392 A.2d at 1118 (footnote omitted) (emphasis in original).

The statute here is as clear and unambiguous today as it was when it was before the Court in *State Farm.* The provision in § 544(a) for periodic payments in no way changes that view. The act states that benefits payable under § [543] "shall be reduced to the extent that the recipient has recovered benefits under workmen's compensation laws of any state or the federal government." The purpose of the act is to put a limited amount of money in the hands of an injured individual under certain circumstances without regard to whether another person is liable for the injuries which the claimant sustained. Where a person is injured while covered under the Workmen's Compensation Act, this purpose has already been achieved. Furthermore, contrary to appellant's assertions, he is not entitled to PIP benefits as a matter of right on the basis that he should be made whole since he has suffered uncompensated wage losses. Manifestly, Smelser's proposed interpretation would contravene the established principle of statutory construction that a court may not insert or omit words to make a statute express an intention not evidenced in its original form. *See Dowling,* 281 Md. at 419, 379 A.2d 1007.

Since the sum recovered here is in excess of the benefits payable under § [543], a negative balance is created and Smelser is entitled to nothing from his PIP carrier. This is not a windfall for the insurance company, as was suggested at oral argument, because the company undoubtedly factored the statutory provision into its rate when it calculated its potential exposure.

*Smelser v. Criterion Ins. Co.,* 293 Md. 384, 393–94, 444 A.2d 1024, 1029 (1982).

Applying this "clear and unambiguous" statute in a case similar to the present one, the Court in *Hines v. Potomac Electric Power Co.,* 305 Md. 369, 504 A.2d 632 (1986), resolved that when an employee recovers workers' compensation benefits in an amount greater than the sum of PIP and UM coverages, the statutory reduction required in § 543(d) (the predecessor to the current Ins. § 19–513(e)) results in the insurer having no PIP/UM liability to the employee:

In the instant case, Hines recovered workmen's compensation benefits of over $35,000, an amount far exceeding the $2,500 in PIP coverage that PEPCO was required to provide under § 539. As to Hine's claim for PIP benefits, we find that *Smelser* is controlling where the claimant has recovered workmen's compensation benefits in an amount in excess of the limit of PIP coverage. Additionally, we believe that *Smelser's* reading of § 543(d), based upon the plain language of the statute, is no less applicable to benefits payable under the UM coverage required by § 541. The statute clearly provides that "[b]enefits payable under the coverage required in §§ 539 *and 541* of this article shall be reduced to the extent that the recipient has recovered benefits under workmen's compensation laws...." Art. 48A, § 543(d) (emphasis supplied). With respect to *both* PIP and UM coverage, § 543(d) demonstrates a clear and unambiguous legislative intent to require the reduction of *both* categories of benefits by the amount of workmen's compensation benefits already recovered. In the instant case, the benefits payable under PEPCO's PIP and UM coverage, $2,500 and $20,000, respectively, are reduced by the amount of workmen's compensation benefits already recovered by Hines, approximately $35,000. Because the workmen's compensation benefits recovered exceed the total of PIP and UM coverage, PEPCO, under § 543(d), has no obligation to Hines.

Hines further contends that his workmen's compensation recovery failed to compensate him for certain elements of his damages, such as pain and suffering, and that this failure entitles him to UM benefits from PEPCO. The short answer to this contention is that § 543(d) draws no distinction between damages that have been compensated for and damages that have not been compensated for. As we stated in *Smelser* with regard to wage losses that had not been compensated for, "[this] proposed interpretation would contravene the established principle of statutory construction that a court may not insert or omit words to make a statute express an intention not evidenced in its original

form." *Smelser, supra,* 293 Md. at 393, 444 A.2d at 1029 (citation omitted).

*Hines,* 305 Md. at 376–77, 504 A.2d at 636. As did the former § 543(d), the current section, Md.Code, Ins. § 19–513(e), provides nearly identically that "[b]enefits payable under the coverages described in § § 19–505 [the section which provides for PIP coverage] and 19–509 [the section which provides for UM coverage] of this subtitle shall be reduced to the extent that the recipient has recovered benefits under the workers' compensation laws of a state or the federal government for which the provider of the workers' compensation benefits has not been reimbursed." [6] Md.Code, Ins. § 19–513(e).

As we articulated in *Polomski,* the purpose of the workers' compensation system is to provide efficiency and stability to the uncertainty of providing for the costs of on-the-job injuries:

> In reality, the [Maryland Workers' Compensation] Act protects employees, employers, and the public alike. To be sure, the Act maintains a no-fault compensation system for employees and their families for work-related injuries where compensation for lost earning capacity is otherwise unavailable. *See Bethlehem–Sparrows Point Shipyard v. Damasiewicz,* 187 Md. 474, 480, 50 A.2d 799, 802 (1947); *Paul v. Glidden Co.,* 184 Md. 114, 119, 39 A.2d 544, 546 (1944). At the same time, however, the Act also recognizes the need to protect employers from the unpredictable nature and expense of litigation, and the public from the overwhelming tax burden of "caring for the helpless human wreckage found [along] the trail of modern industry." *Liggett & Meyers Tobacco Company v. Goslin,* 163 Md. 74, 80, 160 A. 804, 807, (1932); *Brenner v. Brenner,* 127 Md. 189, 192, 96 A. 287, 288 (1915). *See* Ch. 800 of the Acts of 1914; *see also*

---

6. We recognize that the current Ins. § 19–513(e) adds that the workers' compensation benefits for the purposes of the reduction are those "for which the provider of the workers' compensation benefits has not been reimbursed," a requirement absent from the former Md.Code, Art. 48A § 543(d) provision. The added requirement does not alter our analysis here.

*Belcher v. T. Rowe Price,* 329 Md. 709, 736–37, 621 A.2d 872, 885–86 (1993). In other words, the Act provides employees suffering from work-related accidental injuries, regardless of fault, with a certain, efficient, and dignified form of compensation. In exchange, employees abandon common law remedies, thereby relieving employers from the vagaries of tort liability. *Belcher,* 329 Md. at 736, 621 A.2d at 885 (citing 1 Arthur Larson, *The Law of Workmen's Compensation,* § 1.20 at 2 (1992)).

*Polomski v. Mayor of Balt.,* 344 Md. 70, 76–77, 684 A.2d 1338, 1341 (1996) (footnote omitted). Because Officer Parry was injured while on duty, his employer, Baltimore County, responded promptly, pursuant to a duty imposed by the workers' compensation laws, to ensure that the expenses incurred by Officer Parry for the treatment of his injuries were paid. As the trial court found,

> In this matter, the Baltimore County Workers' Compensation Claims Office opened a claim under reference number 100–2015136 and authorized payment of accident leave and medical bills as benefits under Maryland's Workers' Compensation laws. Bills were sent to the Baltimore County Workers' Compensation Claims Office and paid in accordance with the Workers' Compensation Commission Medical Fee Schedule. From August 2002 through November 18, 2004, Baltimore County sent multiple letters to the legal counsel for the Estate of Mark Parry communicating payment of benefits to the Estate under workers' compensation laws. The correspondence also referred specifically to the Baltimore County Workers' Compensation Claim Number 100–2015136 and to the amount of the workers' compensation lien against any future settlements with the Estate of Mark Parry. The August 27, 2002, correspondence from Mr. Stephen Pohl, the Claims Adjuster for the Baltimore County Office of Budget and Finance advises Henry Belsky, Esquire, counsel for the Estate and Lynne Parry, of the workers' compensation lien against any future settlement. At no time did Lynne Parry or counsel for Lynne Parry and the Estate refuse to accept payments or benefits received

from Baltimore County under the Workers' Compensation laws. Evidence introduced at the motion hearing for summary judgment and/or declaratory judgment showed that Lynne Parry, as personnel [sic] representative of the Estate, submitted medical bills and made written requests to the Baltimore County Workers' Compensation Office that outstanding medical bills be paid.

(citations omitted). The Parrys assert here that no workers' compensation benefits were "recovered" because the Parrys did not file a formal claim for workers' compensation benefits.

The Parrys' argument is unpersuasive. In *State Farm* we defined "recover" in this statutory context in its general meaning as "to get," "to obtain," "to come into possession of," "to receive," *State Farm*, 283 Md. at 671, 392 A.2d at 1118 (quoting *Garza v. Chi. Health Clubs, Inc.*, 347 F.Supp. 955, 962 (N.D.Ill.1972); *Covert v. Randles*, 53 Ariz. 225, 87 P.2d 488, 490 (1939); *Swader v. Kan. Flour Mills Co.*, 103 Kan. 378, 176 P. 143, 144–45 (1918); BLACK'S LAW DICTIONARY 1440 (rev. 4th ed.1968)). In *State Farm*, we held that the injured employee, Patrick Morris, "recovered" workers' compensation benefits because "he received $379.50 from his employer's insurance carrier as a result of his claim under the workmen's compensation law." *State Farm*, 283 Md. at 672, 392 A.2d at 1118.

The Parrys seek to distinguish the present case from *Hines* and *State Farm* on the basis that no formal workers' compensation claim for benefits was filed by them. This effort fails for one essential reason—under the language of Ins. § 19–513(e), insurers are *required* to reduce PIP and UM benefits payable under such policies to injured employees by the amount of workers' compensation benefits paid for which the provider of the workers' compensation benefits has not been reimbursed. Md.Code, Ins. § 19–513(e) ("Benefits payable under the coverages described in §§ 19–505 and 19–509 *shall be reduced . . . .*") (emphasis added); *State Farm*, 283 Md. at 675, 392 A.2d at 1120 ("In sum, State Farm was required by Art. 48A, § 543(d) [the predecessor section to Ins. § 19–513(e) ], to reduce the PIP benefits payable to Mr. Morris by

the amount of the workmen's compensation benefits which he had received."); *see Bernick v. Aetna Life & Cas.,* 158 N.J.Super. 574, 386 A.2d 908, 910 (Morris County Ct.1978) (interpreting an almost identical statutory scheme and finding that the deduction under the New Jersey insurance statute "is mandatory"). Thus, under the definition of "recovered" in Ins. § 19–513(e) as interpreted in *State Farm,* regardless of whether the Parrys filed a claim for workers' compensation benefits, the County's (or the insurer's) payment of Officer Parry's medical expenses means that the Parrys "recovered" workers' compensation benefits, and *requires* the reduction of the UM/UIM benefits payable by Allstate to the extent of the workers' compensation benefits provided by the County (or its insurer) for which the provider has not been reimbursed. Md.Code, Ins. § 19–513(e). Although it does not affect otherwise the mandatory reduction, additionally, as the trial court found, the Parrys acquiesced in the County's (or its insurer's) payments for Officer Parry's medical care expenses.

As we described, the UM/UIM and/or PIP insurance benefits payable are required to be reduced under Ins. § 19–513(e) to the extent of the recipient's un-reimbursed workers' compensation benefits. Md.Code, Ins. § 19–513(e); *State Farm,* 283 Md. at 675, 392 A.2d at 1120. Notably, the Parrys cannot allege here that, had their UM/UIM policy limit with Allstate been greater than the $168,169.87 paid by the County (or its insurer), pursuant to the workers' compensation laws, for Officer Parry's medical care expenses, they would be precluded from seeking the difference due to the County's initiation of payments. That position would be contrary to the holding in *Revis* that "[w]here the workers' compensation recovered by the insured is less than the total of the amounts due the insured under the PIP and UM coverages, the insured is entitled to the difference." *Revis,* 322 Md. at 688, 589 A.2d at 485.

Unfortunately for the Parrys, the total UM/UIM coverage in their policy with Allstate was substantially less than the amount paid in workers' compensation benefits to cover Offi-

cer Parry's medical care expenses.[7] The amounts paid for Officer Parry's medical expenses were "recovered" by the Parrys and were not reimbursed to the County (or its insurer). Under Ins. § 19-513(e), UM/UIM and/or PIP benefits payable must be reduced to the extent the recipient recovers un-reimbursed workers' compensation benefits. Md.Code, Ins. § 19-513(e). Because the amount of workers' compensation benefits paid by the County (or its insurer) exceeded the maximum UM/UIM benefits payable under the Parrys' policy with Allstate, the trial court and the Court of Special Appeals ruled correctly that the Parrys are not entitled to recover from Allstate.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONERS.**

---

7.  That the Parrys cannot recover here under the UM/UIM coverage in the policy they held with Allstate is consistent with our finding in *Hines* that UM coverage is intended mainly to provide a means of protective compensation when other means of compensation are not available. In *Hines*, we stated

> [T]he purpose of mandating UM coverage is to provide some measure of compensation to the innocent victims of financially irresponsible uninsured motorists. *See Rafferty v. Allstate Insurance Co.*, 303 Md. 63, 70, 492 A.2d 290, 294 (1985). The adoption of Hines's position would lead to an anomalous result: "[it] would give a victim of an uninsured motorist greater insurance protection than would be available if he had been injured by an insured motorist having only the minimum required liability insurance." *Rafferty v. Allstate Insurance Co., supra*, 303 Md. at 70, 492 A.2d at 294 (quoting *Yarmuth v. Government Employees Insurance Co.*, 286 Md. 256, 265, 407 A.2d 315, 319 (1979)). Indeed, the practical effect of requiring a self-insurer to maintain unlimited UM coverage would be to place the self-insurer in the shoes of the tortfeasor, the uninsured motorist, with respect to liability for the total amount of the claimant's damages. This we refuse to do.

*Hines*, 305 Md. at 374, 504 A.2d at 634-35.