75 A.3d 1022

**David ROSS**

v.

**John AGURS AND PROGRESSIVE CASUALTY INSURANCE COMPANY.**

No. 978, Sept. Term, 2012.

Court of Special Appeals of Maryland.

Sept. 9, 2013.

John R. Kelly (Law Office of Andrew S. Kasmer PC, on the brief), Fairfax, VA, (Arman E. Ravery, Bladensburg, MD), for Appellant.

Alan R. Siciliano (DeCaro, Doran, Siciliano, Gallagher & DeBlasis, LLP, on the brief), Bowie, MD, (Matthew Goodman, Washington, D.C.), for Appellee.

Panel: WOODWARD, ZARNOCH and GARY E. BAIR (Specially Assigned), JJ.

BAIR, J.

The instant appeal arises from a third-party claim filed in the Circuit Court for Prince George's County by appellant, David Ross, against John Agurs and Progressive Casualty Insurance Company ("Progressive"), for damages sustained in a motor vehicle accident for which appellant sought benefits under an underinsured motorist ("UIM") policy issued by Progressive. The motor vehicle accident that gave rise to appellant's third-party claim was a rear-end collision caused by Agurs that occurred on December 8, 2006, while appellant was driving within the scope of his employment with Shelton Transportation ("Shelton"). As a result of the accident, appellant also filed a claim for and received workers' compensation benefits of $84,446.21.

On November 21 and 22, 2011, a jury trial was held in circuit court, resulting in a verdict in favor of appellant in the amount of $91,583.90. On November 30, 2011, the circuit court entered judgment ("the judgment") in favor of the appellant in the amount of $91,583.90. Subsequent to the entry of judgment, appellant filed a Motion to Enforce Judgment, requesting the trial court order Progressive to pay a portion of the judgment under its UIM coverage. Appellant contended that the amount due and owing from Progressive

was $51,875.58, representing the balance of the judgment after reduction for unreimbursed workers' compensation benefits. On July 2, 2012, the circuit court denied appellant's post-trial motion.

On appeal to this Court, appellant presents a single question for our review, which we have slightly rephrased:

Did the circuit court err in denying appellant's motion to enforce judgment against Progressive?

For the reasons that follow, we find no error and affirm the judgment of the circuit court.

### Factual and Procedural History

On December 8, 2006, in Washington, D.C., the motor vehicle operated by appellant was struck from the rear by a vehicle driven by John Agurs. Appellant was operating within the scope of his employment with Shelton at the time. The vehicle driven by appellant was insured by Shelton with a commercial liability policy issued by Progressive that included uninsured/underinsured motorist ("UM/UIM") coverage with policy limits of $1,500,000. Shelton had a workers' compensation policy through the Injured Workers Insurance Fund ("IWIF") providing coverage for bodily injury and medical expenses. The vehicle driven by Agurs was insured by State Farm with third-party liability coverage of $25,000/$50,000.

As a result of the accident, appellant sustained injuries to his left knee and lower back. Appellant sought relief for his injuries by filing a workers' compensation claim, and a third-party claim against Agurs that was later amended to include Progressive.

Appellant initiated this action in the Circuit Court for Prince George's County on November 25, 2009, by filing a third-party claim against Agurs for damages resulting from the motor vehicle accident caused by Agurs' negligence. Appellant also submitted a claim for benefits under Shelton's UIM Policy with Progressive, which was later denied. On December 23, 2009, appellant filed an amended complaint adding Progressive as a defendant and asserting that Progressive's denial of UIM benefits pursuant to Progressive's UM/

UIM insurance policy with Shelton constituted a breach of contract. On June 17, 2011, prior to the trial in circuit court, Agurs offered his $25,000 policy limits to appellant. Within sixty days of receiving notice of the offer, Progressive notified appellant that it would not consent to acceptance of the offer of policy limits and would not waive subrogation. Progressive therefore tendered a check in the amount of $25,000 to appellant pursuant to Md.Code (1996, 2011 Repl. Vol., Supp. 2012), § 19–511 of the Insurance Article.[1] Accordingly, appellant filed a second amended complaint containing a sole count against Progressive for breach of contract.

On November 21, and 22, 2011, a jury trial was held in the circuit court. The jury returned a verdict in favor of appellant for a total of $91,583.90, comprised of: $24,083.90 in past medical expenses, $30,000.00 in lost wages, and $37,500.00 in noneconomic damages. On November 30, 2011, the circuit court entered judgment in favor of appellant in the amount of $91,583.90. As a result of the $25,000 payment made by Progressive prior to trial, the remaining balance of the judgment was $66,583.90. At the time of the trial, appellant's workers' compensation claim was closed, and the amount of the unreimbursed workers' compensation lien ("the lien") held by IWIF was $84,446.21.

Following the trial court's entry of judgment, appellant made a written demand of Progressive for payment of a portion of the judgment under its UIM coverage. Progressive declined to make payment. On April 25, 2012, appellant filed a Motion to Enforce Judgment, requesting that the trial court enter an order directing Progressive to pay the sum of $51,875.58, which appellant contended was the amount due and owing on the balance of the judgment after reduction for unreimbursed workers' compensation benefits.[2] Progressive

---

1. Md.Code (1996, 2011 Repl. Vol., Supp. 2012), § 19–511 of the Insurance Article sets forth mandatory settlement procedures for claims arising under UM/UIM coverage.

2. Appellant maintained in the circuit court that the balance owed on the judgment was $51,875.58, but in this Court concedes that this

subsequently filed an opposition to appellant's motion to enforce judgment. On July 2, 2012, the circuit court denied appellant's post-trial motion without a hearing. Appellant noted this timely appeal on July 27, 2012.

## DISCUSSION

Both parties agree that the balance of the circuit court judgment is $66,583.90, and that the amount of the workers' compensation lien held by IWIF is $84,446.21, i.e., the amount appellant received under his workers' compensation claim. The parties are also in agreement that Progressive is entitled to reduce the benefits payable to appellant under its UIM coverage to the extent of the unreimbursed workers' compensation benefits pursuant to Md.Code (1996, 2011 Repl. Vol.), § 19–513(e) of the Insurance Article ("Ins."), which reads:

> (e) *Reduction due to workers' compensation benefits.*—Benefits payable under the coverages described in §§ 19–505 and 19–509 of this subtitle shall be reduced to the extent that the recipient has recovered benefits under the workers' compensation laws of a state or the federal government for which the provider of the workers' compensation benefits has not been reimbursed.

Ins. § 19–513(e).[3]

■ Although appellant does not dispute the amount of the workers' compensation lien, he nonetheless argues that the amount of the lien is not properly applicable as the amount of unreimbursed workers' compensation benefits for purposes of Ins. § 19–513(e). Appellant maintains that in order to determine the extent to which UIM benefits may be reduced under Ins. § 19–513(e), the amount of unreimbursed workers' com-

---

number must be reduced by the $25,000 that Progressive paid to appellant prior to trial. Thus, on appeal, appellant contends that the final balance due and owing from Progressive is $26,875.58.

3. Sections 19–505 and 19–509 of the Insurance Article are the statutory provisions governing personal injury protection ("PIP") coverage and UM/UIM coverage, respectively. *See TravCo Insurance Co. v. Williams,* 430 Md. 396, 403, 61 A.3d 50 (2013).

pensation benefits must first be calculated pursuant to Md. Code (1991, 2008 Repl. Vol.), § 9–902 of the Labor & Employment Article ("LE"), which reads, in pertinent part:

(e) *Distribution of damages.*—If the covered employee or the dependents of the covered employee recover damages, the covered employee or dependents:

(1) first, may deduct the costs and expenses of the covered employee or dependents for the action;

(2) next, shall reimburse the self-insured employer, insurer, Subsequent Injury Fund, or Uninsured Employers' Fund for:

(i) the compensation already paid or awarded; and

(ii) any amounts paid for medical services, funeral expenses, or any other purpose under Subtitle 6 of this title; and

(3) finally, may keep the balance of the damages recovered.

(f) *Court costs and attorney's fees.*—In an action brought by a covered employee or the dependents of the covered employee under subsection (c) of this section, the covered employee or the dependents of the covered employee, the self-insured employer, the insurer, the Subsequent Injury Fund, and the Uninsured Employers' Fund shall pay court costs and attorney's fees in the proportion that the amount received by each bears to the whole amount paid in settlement of any claim or satisfaction of any judgment obtained in the case.

LE § 9–902(e)–(f).

According to appellant, LE § 9–902 reduces the amount of the reimbursement to the workers' compensation insurer by a proportional amount of attorney's fees and costs; therefore, what is due and owing as reimbursement under Ins. § 19–513(e) is the amount of the workers' compensation lien less attorney fees and costs. Appellant contends that only after calculating the amount due and owing pursuant to this manner under LE § 9–902 can the court determine the amount of unreimbursed workers' compensation benefits that Progressive is entitled to deduct under Ins. § 19–513(e) from the benefits payable under its UIM coverage.

Applied to the facts here, appellant concludes that the amount of unreimbursed workers' compensation benefits is $39,708.32. Appellant's finding is based on the following calculations: first, under LE § 9–902, the third-party recovery ("tortfeasor money") of $25,000 must be reduced by a forty percent [4] attorney fee of $10,000, and costs of $4,040.59, leaving the amount of $10,959.41 which IWIF is entitled to recover.[5] Next, the IWIF lien of $84,446.21 must also be reduced, under LE § 9–902, by court costs and attorney's fees of forty percent, leaving a balance of $50,667.73. Lastly, the IWIF lien of $50,667.73 must be reduced by the amount of $10,959.41 that IWIF is entitled to recover from the tortfeasor money, resulting in the final amount of $39,708.32 in unreimbursed workers' compensation benefits. Following appellant's calculation of the unreimbursed workers' compensation benefits is a straightforward application of Ins. § 19–513(e), in which appellant concludes that Progressive may deduct the $39,708.32 in unreimbursed workers' compensation benefits from the judgment balance of $66,583.90, leaving a final balance of $26,875.58 due and owing from Progressive to appellant.

Progressive argues that LE § 9–902 "does not remotely suggest that a workers' compensation lien is reduced by costs or attorney fees" and appellant's reliance on the statute is misplaced. According to Progressive, the instant case is controlled by Ins. § 19–513(e). Progressive interprets Ins. § 19–513(e), as applied to the facts here presented, as meaning that it is not obligated to make payment to appellant under its UIM policy. In support of its interpretation, Progressive argues that the lien held by IWIF in the amount of $84,446.21 represents the amount of benefits recovered by appellant for which IWIF has not been reimbursed, and that

---

4. At oral argument, appellant explained that the forty percent rate was established by agreement between appellant and IWIF, and was not in evidence before the trial court. Progressive acknowledged that the rate is not in dispute.

5. The parties do not dispute the application of LE § 9–902 as it relates to the $25,000 third-party recovery.

"there is nothing in Ins. § 19–513 or LE § 9–902 that allows the unreimbursed portion of a workers' compensation lien to be reduced by attorney fees." Given the fact that workers' compensation lien of $84,446.21 exceeds the amount of $66,583.90 remaining on the judgment, it is Progressive's contention that it owes nothing to appellant. We agree with Progressive.

In *Parry v. Allstate Insurance Co.*, 408 Md. 130, 968 A.2d 1053 (2009), a case involving a UM claim by the estate of a police officer who died as a result of injuries sustained in an accident while on-duty, the Court of Appeals explained the interplay between Ins. § 19–513 and LE § 9–902. Turning first to the Labor and Employment article, the Court noted that LE § 9–901 provides a choice of remedies to an employee injured on the job by a person other than their employer. *Id.* at 136, 968 A.2d 1053. The injured employee may elect to (1) file a claim for compensation against the employer; or (2) bring an action for damages against the person or persons liable for the injury or death. *Id.* However, in those situations in which the injured employee "brings an action against and recovers damages from the third-party tortfeasor, following a workers' compensation award or payment of compensation," the role of LE § 9–902 is to prevent the injured employee from "receiving a windfall recovery from both sources for the same damages." *Id.*

Similarly, the Court explained that the intent of Ins. § 19–513(e), as interpreted under its statutory predecessor, Md. Code, Art. 48A § 543(d), in *State Farm Mut. Auto. Ins. Co. v. Ins. Comm'r*, 283 Md. 663, 392 A.2d 1114 (1978), "is to restrict the duplication of insurance benefits in several respects, one of which in subsection (d) is the reduction of PIP[/UM] benefits to the extent that the claimant recovered workmen's compensation benefits." 430 Md. at 137–38, 59 A.3d 1001 (internal quotation marks omitted). Section 19–513 of the Insurance Article applies to claims for UM/UIM benefits made by injured employees who cannot be made whole in a third-party tortfeasor action because the tortfeasor is either uninsured or underinsured. *Id.* at 137, 59 A.3d 1001. In such situations,

Ins. § 19–513(e) provides for the amount of benefits payable to employees under UM/UIM policy coverage to be "reduced to the extent of funds paid in workers' compensation benefits that are not reimbursed otherwise." *Id.*

After construing Ins. § 19–513(e) and LE § 9–902, the Court of Appeals turned to the facts before it. There, the workers' compensation carrier paid $168,169.87 in medical expenses incurred by Officer Parry as a result of a motor vehicle accident that occurred while he was on-duty. *Id.* at 134, 59 A.3d 1001. The third-party tortfeasor was covered by an insurance policy with GEICO with liability coverage of $20,000. *Id.* Parry was insured with a private liability policy issued by Allstate with UM/UIM limits of $100,000. *Id.* The Parrys accepted the $20,000 policy limit in settlement with GEICO and demanded the remaining $80,000 under their UM/UIM coverage with Allstate. *Id.* at 135, 59 A.3d 1001. Agreeing with the lower courts, the Court of Appeals concluded that Allstate had "no liability under the UM/UIM coverage of the Parry's policy because the Parrys recovered benefits under the workers' compensation laws of [Maryland] in excess of the UM/UIM policy limit." *Id.* at 140, 59 A.3d 1001 (internal quotation marks omitted).

Notably absent in the Court's analysis and application of LE § 9–902 and Ins. § 19–513(e) in *Parry* is language suggesting that the workers' compensation lien must be reduced by attorney fees as appellant here suggests. According to appellant, *Parry* is easily distinguished from the instant case because there, the workers' compensation lien exceeded the available coverage under the UM/UIM policy. Appellant argues further that, "[e]ven assuming the workers' compensation lien would be reduced by forty percent for attorney's fees, the outstanding workers' compensation lien would have been $100,901.92, which would still exceed the available UM/UIM coverage by $901.92." Appellant's argument is unpersuasive.

Assuming, *arguendo*, that appellant's interpretation of LE § 9–902 is correct, the fact that the amount of the lien in *Parry* would have exceeded the available UM/UIM coverage

even after reducing it by forty percent for attorney's fees does not explain the Court's truncated analysis. The Court does not simply jettison statutorily mandated considerations where it determines that the outcome of the analysis will be unaffected. Furthermore, appellant does not suggest that LE § 9–902 prescribes the rate of forty percent for attorney's fees. Nor does appellant suggest that the rate of forty percent applied in *Parry*. Thus, it is not implicit in the Court's analysis that the workers' compensation lien would have exceeded the UM/UIM coverage even after reducing for attorney's fees.

Rather, if the workers' compensation lien in *Parry* were reduced, for example, by a rate of forty-five percent in appellant's hypothetical, the outstanding lien would be $92,493.46, which would be $7,506.54 *less than* the available UM/UIM coverage. Therefore, under appellant's interpretation of LE § 9–902, the rate of attorney's fees is necessarily determinative of the outcome under Ins. § 19–513(e), yet appellant offers no explanation as to why the Court did not reduce the workers' compensation lien by attorney fees in *Parry* in order to determine Allstate's liability under Ins. § 19–513(e). Nor does appellant offer any explanation as to why this Court should now do so.

Progressive maintains that appellant's argument for reducing the workers' compensation lien by attorney fees is foreclosed by this Court's opinion in *Blackburn v. Erie Ins. Grp.,* 185 Md.App. 504, 971 A.2d 368 (2009). In *Blackburn,* this Court was required to interpret the meaning of "reimbursement" under § 19–513(e). There, Michael Blackburn sustained injuries in an automobile accident while acting in the scope of his employment with the United States government, for which he received workers' compensation benefits through the Department of Labor. *Id.* at 506, 971 A.2d 368. The Department of Labor asserted a workers' compensation lien for the amount of $246,305.66. *Id.* Blackburn was covered under a personal insurance policy with Erie Insurance Company, which provided UM/UIM benefits in the amount of $250,000. *Id.* The third-party tortfeasor was insured by State

Farm with liability limits of $100,000. *Id.* Blackburn accepted State Farm's offer of policy limits of $100,000 and thereafter paid to the Department of Labor the amount of $27,396.28 in reimbursement of the workers' compensation lien. *Id.* After receiving the $27,396.28 payment, the federal government closed its lien against Blackburn. *Id.* Blackburn filed a claim against Erie for benefits under its UM/UIM coverage, which Erie denied on the grounds that the unreimbursed portion of the workers' compensation lien exceeded the amount of $150,000 remaining under the UM/UIM policy. *Id.* at 507, 971 A.2d 368.

The issue presented to this Court was whether the federal government, by voluntarily accepting the amount of $27,396.28 in full satisfaction of the workers' compensation lien, had been "reimbursed" for purposes of Ins. § 19–513(e). *Id.* In our analysis of Ins. § 19–513(e), we concluded that the statute is unambiguous, noting that

> [t]he word "reimbursement" is commonly understood to mean "repayment." A "useful starting point" in determining the plain meaning of a statutory term is that term's dictionary definition. *Comptroller of the Treasury v. Sci. Applications Int'l Corp.*, 405 Md. 185, 202, 950 A.2d 766 (2008) (*quoting Ishola v. State*, 404 Md. 155, 160, 945 A.2d 1273 (2008)). The *Merriam–Webster Dictionary* defines "reimburse" as "1. to pay back to someone; repay. 2. To make restoration of or equivalent to." The *American Heritage College Dictionary* defines "reimburse" as "1. to repay (money spent); refund. 2. To pay back or compensate (another party) for money spent or losses incurred."

185 Md.App. at 514, 971 A.2d 368.

This Court found that notwithstanding that the lien held by the federal government had been satisfied, the "accepted definition of the word 'reimburse' simply does not support appellants' argument that a carrier has been fully 'reimbursed' when it has not been repaid for *all the monies* it advanced to Mr. Blackburn." *Id.* (emphasis added). Accordingly, we concluded that the plain language of Ins. § 19–513(e) allowed Erie

to calculate the benefits payable under the UM/UIM provisions of its policy by deducting from the $250,000 policy limit: (1) the amount of $100,000 received from State Farm, and (2) the amount of $246,305.66 paid out by the federal government as workers' compensation benefits, less the amount of $27,396.28 paid by appellant in reimbursement of the workers' compensation lien. *Id.* at 515, 971 A.2d 368. Consequently, because the amount of unreimbursed workers' compensation benefits was approximately $218,000, Erie was not obligated to make payment to Blackburn under Ins. § 19–513(e) because the amount of unreimbursed workers' compensation benefits exceeded the available UM/UIM coverage. *Id.* at 515–16, 971 A.2d 368.

Here, appellant urges us to find that the reimbursement amount under Ins. § 19–513(e) is the amount of the workers' compensation lien less attorney's fees of forty percent. Appellant argues that in adopting Ins. § 19–513(e), the legislature "did not state that dollar-for-dollar reimbursement was required," nor did it "specify what constituted 'workers' compensation benefits which have not been reimbursed." Rather, appellant argues, that was "left to the workers' compensation provider and the beneficiary to determine by agreement." It is thus appellant's contention that Ins. § 19–513(e) is ambiguous. We do not agree.

The Court's analysis in *Blackburn* makes clear that the amount of reimbursement under Ins. § 19–513(e) is determined by the amount of benefits received. *Id.* at 514, 971 A.2d 368 ("Section 19–513(e) is unambiguous."); *see, e.g., TravCo,* 430 Md. at 409, 61 A.3d 50 (stating that the language of Ins. § 19–513(e) is clear and unambiguous and defining "reimbursement" as "repayment"); *Hines v. Potomac Elec. Power Co.,* 305 Md. 369, 504 A.2d 632 (1986) (noting that the predecessor statute to Ins. § 19–513(e) is "clear and unambiguous in requiring the reduction of PIP and UM benefits to the extent that the recipient has recovered [workers' compensation] benefits"). In both *Parry* and *Blackburn,* the amount of benefits received by the injured employee, for which the

carrier asserted a lien, was accepted by the Court as the reimbursement amount under Ins. § 19–513(e). We see no reason why the amount of the workers' compensation lien in the instant case should not likewise serve as the amount of reimbursement under Ins. § 19–513(e). Appellant has not cited to any authority, nor have we found any, that supports the proposition that the proper amount of reimbursement under Ins. § 19–513(e) is the amount of the workers' compensation lien less attorney's fees. Absent such authority, and in light of the foregoing analysis, we hold that because the amount of the unreimbursed workers' compensation lien exceeds the balance of the judgment, Progressive is not obligated to make payment to appellant under the UM/UIM provision of its policy. As such, the court below properly denied appellant's Motion to Enforce Judgment against Progressive.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**